**Joseph F. MORAN, Appellant and Cross–Appellee,**

v.

**Joan M. MORAN, Appellee and Cross–Appellant.**

Superior Court of Pennsylvania.

Argued May 22, 2003.

Filed Nov. 25, 2003.

Reargument Denied Jan. 29, 2004.

---

Madeline H. Lamb, West Chester, for
Joseph F. Moran.

C. Barry Buckley, West Chester, for Joan M. Moran.

BEFORE: TODD, GRACI, and TAMILIA, JJ.

OPINION BY TODD, J.:

¶ 1 Joseph F. Moran ("Husband") and Joan M. Moran ("Wife") cross-appeal the order entered November 21, 2002 by the Chester County Court of Common Pleas with respect to their cross-exceptions to the Report and Recommendations of the special master entered on April 19, 2002 following an equitable distribution hearing. For the reasons that follow, we affirm in part and vacate in part.

¶ 2 Husband and Wife were married on February 3, 1973. During the marriage, they had two children, both of whom are now adults. At the time they were married, Husband worked as a director of engineering for Upland Industries, Inc. He also worked as an industrial engineer for A.P. DeSanno & Sons, Inc. In June 1980, Husband started a company, Pacer Industries, which manufactures specialty grinding wheels for the paper and steel industry. Husband owns 100% of the stock of the corporation and he presently manages the company's operations. Wife worked as a secretary for the Commonwealth of Pennsylvania when she married Husband. Later, Wife worked at a department store, but stopped working after the birth of the parties' first child. In 1988 or 1989, Wife began working part-time selling jewelry. Wife stopped working, however, in 1993 or 1994 and has not worked outside of the home since that time.

¶ 3 In July 1993, Husband and Wife purchased a house in Stone Harbor, New Jersey for $275,000. The Stone Harbor property presently is valued at $725,000, and, as of November 14, 2002, there was a balance of $279,189.14 on the mortgage. The Stone Harbor property also is encumbered by a home equity loan which, as of September 27, 2001, had a balance of $35,359.41. In addition to the Stone Harbor property, Husband and Wife own a residence in Exton, Pennsylvania, which they purchased in 1998 for $175,000. Since the parties' separation, Husband has resided in the Exton house, and has paid the mortgage payments and the taxes and insurance on the residence. The balance on the mortgage of the Exton house as of November 14, 2001 was $173,208.93.

¶ 4 Husband initiated divorce proceedings against Wife on October 19, 1999. On December 3, 2001, Wife filed an Answer and Counterclaim for Alimony. Lynn A. Snyder, Esquire, was appointed as special master, and conducted hearings on December 4, 5, 6, and 12, 2001. On April 19, 2002, Snyder issued a Report and Recommendation, wherein she recommended that Wife receive 63% of the marital property, valued at $1,134,127, and that Husband receive 37% of the marital property. The proposed distribution would allow Husband to keep the Stone Harbor property, but required him to pay Wife $560,937 in equitable distribution, including a lump sum payment of $250,000. The master recommended that Husband refinance the Stone Harbor house and/or Pacer Industries in order to obtain the funds to make the lump sum payment to Wife, and that Wife be listed as a secondary lien holder on the Stone Harbor property once the refinancing is complete. In the event Husband is unable to make the lump sum payment, the master recommended that the Stone Harbor property be sold. Finally, the master recommended that the Husband pay the remaining $310,937 to Wife by making 120 consecutive monthly payments which include 6% interest, and that Husband maintain a life insurance policy on himself listing Wife as the beneficiary

in the minimum amount of what is owed to Wife.

¶5 Husband and Wife both filed exceptions to the master's report. Wife's exceptions included, *inter alia,* the following:

3. As to the Master's award of the Stone Harbor property to Husband, the Master erred in first recognizing that Husband would like to retain the Stone Harbor property, determining that it was not clear that his desire was a feasible option, following which the Master then inconsistently determined that "Husband will be afforded the opportunity to [purchase the property.]" The specific error averred is the Master's failure to reconcile her concern over the feasibility of Husband's retaining the property as earlier expressed and her award of same to Husband when clearly the latter is not practical and is, in fact, prejudicial to Wife.

4. The Master erred in awarding to Husband the Stone Harbor property, subject to the condition that he pay an offset amount to Wife. The consequence of the Master's award is that Wife will in essence have to loan Husband the sum of $310,936.91 necessary to complete the offset payment at below market interest rates and without sufficient security.

5. The Master erred in accommodating Husband's desire to retain the Stone Harbor property in the face of her own concerns about his feasibility to do so; rather the Master should have ordered the sale of same to assure delivery of a larger portion of Wife's distribution to her in cash, which would reduce the offset payment to her and lessen her risk.

(Wife's Exceptions, 4/29/02, at 2 (citations to record omitted).) Wife also alleged that the master erred in finding that Wife was barred from receiving alimony pursuant to 23 Pa.C.S.A. § 3706 and in failing to find that she was entitled to receive equitable reimbursement in lieu of alimony.

¶6 Husband argued in his exceptions that the master erred in recommending that he be required to execute in favor of Wife a note secured by the Stone Harbor property; that the master erred in not allowing Husband to apportion the liens between the Stone Harbor property and the Pacer Industries real estate, where such apportionment would give greater protection to Wife; and that the master erred in not amortizing the equitable distribution payout to Wife in the amount of $310,936,91 over a period of 120 months.

¶7 On November 22, 2002, the Honorable Katherine B.L. Platt entered an opinion and order granting Wife's exceptions with respect to the Stone Harbor property, stating that "I find that in order to effectuate economic justice, the parties must sell the Stone Harbor property with the net proceeds awarded to Wife." (Trial Court Opinion, 11/22/02, at 17 (footnote omitted).) The trial court denied, however, Wife's exceptions to the master's recommendations regarding the award of alimony.

¶8 Subsequently, Husband and Wife filed cross-appeals to this Court. Husband asks us to consider the following questions:

I. Whether the lower court erred in not allowing Husband to retain the Stone Harbor property when retention of same would have furthered the policies of the Divorce Code.

II. Whether the lower court erred in finding that it would prejudice Wife to have Husband pay her over time for her interest in the Stone Harbor property.

III. Whether the lower court erred in finding that distribution would be

greater if the shore house were sold.

IV. Whether Husband, if awarded the Stone Harbor property, should be allowed the option of refinancing the Stone Harbor property and/or Pacer Industries in order to allow him more flexibility in securing financing and also to provide more security for Wife in terms of the liens which she would have against the respective properties.

V. [Whether] the lower court erred in not continuing the master's recommendation that Wife pay to Husband from her share of the marital assets the sum of $9,703.65, which represented her payment to Husband for her share of the marital liabilities.

(Husband's Brief at 7.) Wife raises the following issues on appeal:

I. Whether the trial court erred in its interpretation of 23 Pa.C.S.A. § 3706, when it ruled that said statute can bar an award of alimony prior to the entry of a final decree in divorce.

II. Whether the trial court erred in failing to award equitable reimbursement to [Wife] in lieu of alimony.

(Wife's Brief at 1.)

■■■ ¶ 9 Husband's assertions of trial court error pertain to the equitable distribution of the parties' marital property. When reviewing an order of equitable distribution, "our standard of review is limited, and we will not disturb the trial court's decision absent an abuse of discretion or error of law which is demonstrated by clear and convincing evidence." *Gilliland v. Gilliland,* 751 A.2d 1169, 1171 (Pa.Super.2000) (citation omitted). Additionally, as the trial court noted, a master's report and recommendation, although only advi-

sory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties. *Simeone v. Simeone,* 380 Pa.Super. 37, 551 A.2d 219, 225 (1988).

¶ 10 We now address Husband's arguments on appeal. This Court has recognized that

[t]he methods by which divorcing parties effectuate economic justice are familiar and well settled. The process of equitable distribution is an exercise in marshalling, valuing and dividing the marital pot in a fair manner. Not every piece of property can or should be split in half. Sometimes one spouse is entitled to more property than is the other. In some instances, the sale of property must occur so that each spouse can receive his or her rightful amount. In other instances, a spouse may be allocated a specific item of property and the other spouse will receive cash or a credit for his or her share in that same item.

*Miller v. Miller,* 783 A.2d 832, 835 (Pa.Super.2001).

■■■ ¶ 11 The trial court acknowledged that Husband desires to keep the Stone Harbor property so that his children and grandchildren can enjoy it. (Trial Court Opinion, 11/22/02, at 16.) The trial court also noted that the house was used by the family and not rented out. (*Id.*) There is also no dispute as to the appraised or net value of the house. Nevertheless, the trial court ordered that the house be sold. Husband contends that the trial court's order failed to comply with the policy of the Divorce Code to "[m]itigate the harm to the spouses and their children caused by the dissolution of the marriage", (Husband's Brief at 15), and indeed prejudiced both Husband and Wife by potentially re-

ducing the value of the property due to realtor fees and various taxes related to any sale of the property.

¶ 12 In setting forth its reasons for ordering that the Stone Harbor property be sold, the trial court stated only that "I find that in order to effectuate economic justice, the parties must sell the Stone Harbor property with the net proceeds awarded to Wife." (Trial Court Opinion, 11/22/02, at 17.) The trial court did not, however, explain why economic justice could not be served under the master's recommendations, which would allow Husband an opportunity to refinance the property so that he could retain the property as desired, but would also compensate Wife for her interest in the property. As noted above, under the master's recommendation, Wife would receive a lump sum payment of $250,000, as well as $310,937 in scheduled payments, including a 6% rate of interest, over the next ten years.[1] We further note that under the master's recommendation, if Husband is unsuccessful in refinancing the property, the property ultimately will be sold. Finally, Wife's interests are protected via a life insurance policy on Husband under the master's recommendation. In that the trial court failed to offer reasons to explain its conclusion that the Stone Harbor property must be sold in order to effectuate economic justice, we are constrained to hold that the trial court abused its discretion in this respect. Accordingly, we vacate the portion of the equitable distribution order requiring that the Stone Harbor property immediately be sold.[2]

¶ 13 Husband lastly argues that the trial court erred in not including in its final order a credit to Husband in the amount of $9,703.65, which represents Wife's portion of the marital debt as determined by the master. Husband points out that neither party raised an objection to this issue in their exceptions to the master's report, and, further, that the trial court recognized this amount as part of the master's recommendation in its opinion (Trial Court Opinion, 11/22/02, at 6), but neglected to account for it in the final decree of equitable distribution. As it appears that this may have been an oversight by the trial court, we instruct the court to address the issue on remand.

¶ 14 We now turn to Wife's claims on appeal wherein she first alleges that the trial court failed to award alimony to her. Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. *Isralsky v. Isralsky*, 824 A.2d 1178, 1188 (Pa.Super.2003). We previously have explained that "[t]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." *Twilla v. Twilla*, 445 Pa.Super. 86, 664 A.2d 1020, 1022 (1995) (citations omitted). Alimony "is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." *Id.* (quoting *Perlberger v. Perlberger*, 426 Pa.Super. 245, 626 A.2d 1186, 1203 (1993), *appeal denied,*

---

1. As support for his argument that 6% is a fair rate of interest, Husband notes that the trial court ordered that Wife receive the difference between 37% of the recalculated marital assets and the amount she realizes from the proceeds of the sale of the shore house in amortized payments over a five-year term at 6% interest.

2. In view of our disposition, we need not address Husband's next three issues on appeal, which pertain to the Stone Harbor property.

536 Pa. 628, 637 A.2d 289 (1993)). More-over, "[a]limony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." *Id.* (emphasis original) (citation omitted).

■ ¶ 15 The trial court determined that Wife was precluded from receiving alimony under 23 Pa.C.S.A. § 3706, which provides:

No petitioner is entitled to receive an award of alimony where the petitioner, subsequent to the divorce pursuant to which alimony is being sought, has en-tered into cohabitation with a person of the opposite sex who is not a member of the family of the petitioner within the degrees of consanguinity.

23 Pa.C.S.A. § 3706. The trial court, rely-ing on *Twilla, supra,* concluded that Wife was precluded from receiving alimony as a result of her cohabitation with Joseph Martinkovic that occurred prior to Hus-band and Wife's divorce. Wife contends that the trial court misinterpreted *Twilla,* a case in which the wife admitted cohabita-tion. Wife herein asserts that she is not precluded from receiving alimony because she ended her relationship with Martinko-vic, after concluding that he was interested in her only for her money. (Wife's Brief at 8.) Wife further argues that her rela-tionship with Martinkovic did not meet the definition of cohabitation because Husband failed to establish that there was an eco-nomic bond between Wife and Martinko-vic.

¶ 16 We note that in *Twilla,* this Court held that the wife was not entitled to re-ceive alimony because she admitted to co-habitating with a person of the opposite sex before the entry of the final decree in divorce and the equitable distribution of the marital property. 664 A.2d at 1023. As the trial court noted in the instant case, "[t]he evidence shows that Wife had a relationship with Mr. Martinkovic from the date of separation until the hearings in front of the Special Master. Thus, while alimony was 'being sought' and before the entry of the final decree in divorce, Wife entered into cohabitation with a person of the opposite sex." (Trial Court Opinion, 11/22/02, at 23.) Although Wife argues that she terminated her relationship with Martinkovic, she provides no legal support for her argument that by terminating her relationship, she became re-eligible for ali-mony.

■ ¶ 17 Furthermore, to the extent Wife argues that the trial court erred in determining that her relationship with Martinkovic met the definition of cohabita-tion, we stated in *Miller v. Miller,* 352 Pa.Super. 432, 508 A.2d 550 (1986), that "[c]ohabitation may be shown by evidence of financial, social, and sexual interdepen-dence, by a sharing of the same residence, and by other means." *Id.* at 554. The master in the instant case noted the follow-ing:

Husband presented the testimony of two private investigators, one in Stone Harbor, the other in Lansford. The evidence, which was overwhelming, was that Wife was not residing in Stone Har-bor, but rather in Lansford, PA. with her boyfriend and had been doing so since early 2000. This was further cor-roborated by the Stone Harbor utility usage as well as Wife's check cashing pattern and MAC usage.

It should be noted that Wife denied living with Joseph Martinkovic but rath-er testified that she was just visiting. She also denied keeping her clothes at Martinkovic's residence. Wife's testimo-ny in this regard is not found to be credible. Clearly Wife was not residing

in Stone Harbor and she only testified to a couple of occasions when she was with her mother or visiting her brother. The majority of Wife's time over a two year time span was spent with Martinkovic. Wife accompanied Martinkovic almost everywhere including business related trips, weekend outings and vacations.

While there may have been no comingling of funds, such as joint accounts, there was a financial interdependence with respect to Wife and Martinkovic. Wife was residing with Martinkovic yet she was not paying rent or utilities. She testified that she would only occasionally pay for food and that if they went out to eat the expenses would be shared.

Wife acknowledged a sexual relationship with Martinkovic not only in the Answer and Counterclaim but also [in] her testimony. That Wife was living with Martinkovic for approximately two years demonstrates a commitment on the part of Wife and Martinkovic to the relationship. Present are the qualities of stability, permanence and mutual interdependence.

(Master's Report and Recommendation, 4/19/02, at 31–32 (citations to record omitted).) The trial court determined that the master's findings were reasonable and supported by the record. As previously noted, a master's report and recommendation are to be given the fullest consideration, especially on the issue of the credibility of witnesses. *See Simeone,* 551 A.2d at 225. Accordingly, we find no abuse of discretion by the trial court in determining that Wife cohabitated with Martinkovic and that, as a result, she was not eligible for alimony under Section 3706.

¶ 18 Wife next argues that the trial court erred in failing to properly consider her claim for equitable reimbursement in lieu of alimony. Equitable reimbursement is designed to compensate a spouse for his or her contribution to the marriage where the marital assets are insufficient to do so. *Twilla,* 664 A.2d at 1023. In its opinion, the trial court noted that Wife failed to address this issue in her brief in support of her exceptions to the master's report, but nevertheless implicitly rejected her claim, concluding that "the immediate sale of the Stone Harbor property and distribution of the proceeds to Wife should provide her with assets for her future security." (Trial Court Opinion, 11/22/02, at 24.) In view of our determination that the trial court erred in ordering the immediate sale of the Stone Harbor property, we will not address her equitable reimbursement claim, but instruct the trial court to reconsider the issue upon remand. Wife may seek appellate review of that issue thereafter.

¶ 19 For all of the foregoing reasons, we vacate the portion of the trial court's equitable distribution order requiring the immediate sale of the Stone Harbor property and remand for entry of a new order consistent with this memorandum.

¶ 20 Order **AFFIRMED** in part and **VACATED** in part. Case **REMANDED.** Jurisdiction **RELINQUISHED.**

¶ 21 GRACI, J. files a Concurring and Dissenting Opinion.

CONCURRING AND DISSENTING OPINION BY GRACI, J.:

¶ 1 I am always most reluctant to disagree with my learned colleagues and, to the extent that I am able, I hasten to join them in matters brought before us for disposition. In the present case, I am in full agreement with the majority to the extent it affirms the trial court order of November 21, 2002. I also agree that a remand is necessary in order for the trial court to address what appears to be an oversight in not including in its final order

a credit to Husband in the amount of $9,703.65, which represents Wife's portion of the marital debts as determined by the Master. Accordingly, I readily join the Opinion as it addresses those matters.

¶ 2 I am unable, however, to join my colleagues in the majority to the extent that they vacate the trial court's order as it relates to the Stone Harbor property. It is clear to me that the learned trial court gave the master's report the "fullest consideration" on this as well as all of the matters concerning equitable distribution, which as the majority observes, is obligatory. Opinion, at 1095. While, as the majority observes, the trial court did not explain "why economic justice could not be served under the master's recommendations" relating to the Stone Harbor property, Opinion, at 1096, I am aware of no authority which requires such an explanation and the majority cites none. On the other hand, it seems, at least, implicit that in rejecting the master's recommendations in this regard and devising her own distribution scheme, the learned trial court explained why economic justice was being served (although, again, I am not sure that such an explanation is mandated). Given our limited standard of review which the majority recognizes, Opinion, at 1095, I cannot agree that the learned trial court abused her discretion in directing that the Stone Harbor property immediately be sold or that such an abuse was "demonstrated by clear and convincing evidence" as the majority recites that our precedent requires. *Id.* (citation omitted).

¶ 3 As the trial court explained: " 'Although the master's report is entitled to great weight, that final responsibility for making the [equitable] distribution [of property] rests with the Court.' *Tagnani v. Tagnani*, 439 Pa.Super. 596, 600, 654 A.2d 1136 [, 1138] (1995)." Opinion, 11/24/02, at 8. This responsibility is vested in the sound discretion of the trial court which, as noted above, must give due consideration to the master's recommendations. We review the trial court's determination for abuse of that sizable discretion.

¶ 4 "An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment." *Isralsky v. Isralsky*, 824 A.2d 1178, 1186 (Pa.Super.2003) (discussing abuse of discretion standard in reviewing equitable distribution scheme). As we have explained,

[a]n abuse of discretion "is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that [an] appellate court is of [the] opinion that there was commission of an error of law by the trial court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge but means the clearly erroneous conclusion and judgment—one that is clearly against logic and [the] effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; an improvident exercise of discretion; an error of law." *Myers v. Myers*, 405 Pa.Super. 290, 592 A.2d 339 (1991), citing *Commonwealth v. Powell*, 527 Pa. 288 n. 8, 590 A.2d 1240 n. 8 (1991), quoting Black's Law Dictionary, 5th Ed. (1979).

*Berrington v. Berrington*, 409 Pa.Super. 355, 598 A.2d 31, 34 (1991). "Where there is insufficient evidence to support the trial court's order, the judgment is manifestly unreasonable and must be reversed." *Myers v. Myers*, 592 A.2d at 341.

¶ 5 In my view, the evidence clearly supports the trial court's order of equitable distribution in its entirety. The learned trial court exercised her discretion

soundly, reasonably, and legally. The order was not clearly against logic. That the master reached a different conclusion amounts to no abuse of discretion by the trial court. Nor does the fact that if we were sitting as the initial decision-makers we may have reached a contrary result. "Our review of the ... court's distribution is necessarily limited to a determination of whether in light of the entire distribution, considering all the factors set forth by the legislature, an abuse of discretion occurred." *Diament v. Diament*, 816 A.2d 256, 263 (Pa.Super.2003) (citation omitted).

¶ 6 Moreover, as the trial court recognized, "[a]lthough the master's report is entitled to great weight, the final responsibility of making the distribution rests with the court. Our review is thus based on the court's distribution of property." *McNaughton v. McNaughton*, 412 Pa.Super. 409, 603 A.2d 646, 648 (1992) (citations omitted). Requiring a trial court to explain why, in its view, the master's report did not achieve economic justice smacks of this court reviewing the master's recommendation rather than the distribution ordered by the trial court.

¶ 7 Here, the trial court considered all of the factors which the legislature has directed in arriving at her equitable distribution scheme. Opinion, 11/24/02, at 26–29. Though I may have reached a different conclusion if I were the one exercising my discretion in the first instance, I cannot say on this record that the learned trial court abused her's. Accordingly, I would resolve all of those issues which relate to the sale of the Stone Harbor property (including those which the majority did not address because of its resolution of Husband's first issue) on the basis of the trial court's opinion.

¶ 8 Moreover, I agree with the trial court that Wife waived the claim that she should have been awarded equitable reim-bursement. Nevertheless, as the trial court indicated, even if the merits of this issue were to be addressed, Wife would not be afforded any relief, for the proceeds from the sale of the Stone Harbor property are sufficient to compensate Wife for her contribution to the marriage. Accordingly, I would also resolve this issue on the basis of the trial court's opinion.

¶ 9 Based on the foregoing, therefore, I dissent from that portion of the Opinion which vacates the equitable distribution order to the extent that it requires that the Stone Harbor property be sold immediately. I further dissent from the Opinion to the extent that it does not address Wife's claim that she should have been awarded equitable reimbursement and instructs the trial court to consider that claim upon remand. I would, instead, affirm the order of equitable distribution in its entirety.