J-A16027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| CONNIE E. BULLMAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ERNEST F. BULLMAN | |
| Appellant | No. 1488 WDA 2013 |

Appeal from the Order Entered August 15, 2013
In the Court of Common Pleas of Clearfield County
Civil Division at No(s): No. 2010-1768-CD

BEFORE: DONOHUE, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED NOVEMBER 24, 2014**

Ernest F. Bullman ("Husband") appeals from the order entered August 15, 2013, in the Court of Common Pleas of Clearfield County distributing the parties' marital property and awarding alimony and counsel fees to Connie E. Bullman ("Wife"). On appeal, Husband challenges four of the trial court's findings of fact with respect to the equitable distribution order. In addition, he argues the court erred in awarding Wife alimony and counsel fees. For the reasons set forth below, we affirm.

Wife and Husband were married on December 5, 1981 in Philipsburg, Centre County, Pennsylvania. Two children were produced during this marriage, both adults at all relevant times for this appeal. After nearly 27

years of marriage, in July 2008, the parties separated when Husband moved out of Wife's home.[1]  Wife filed a Complaint in Divorce on September 27, 2010, raising the issues of divorce under section 3301(c) and (d) of the Divorce Code, equitable distribution of marital property, alimony, counsel fees, costs and expenses.  On December 16, 2010, the Court entered an order and stipulation for bifurcation for a divorce decree, but retained jurisdiction over all other matters.

Husband filed a motion for appointment of a Master on March 22, 2012.  Subsequently, the court appointed Donald Gibbony, Esquire, as Master.  A Master's hearing was held on September 21, 2012, with both parties present and represented by counsel.  On February 27, 2013, the Master submitted his Report and Recommendation.  Pertinent to this appeal, the Master made the following findings:  (1) Wife was 66 years old at the time of the hearing and she indicated that she has several health concerns, including suffering from mini-strokes, having issues with diabetes, arthritis, deteriorated discs in her back and clogged arteries; (2) Husband was 57 years old at the time of hearing, appeared to be in good physical health, and indicated that he did not suffer from any disabilities that would prohibit him from engaging in full-time employment; (3) Wife was self-employed as a tax

---

[1]  Wife alleged Husband moved in with his paramour in July.  Husband claimed Wife left their marital residence in November, 2000, and moved to an apartment where he periodically resided.

preparer and also engaged in a small business to sell craft-type items at fairs and festivals; (4) Husband was laid off from his employment as a heavy equipment operator at the time of the hearing;[2] (5) Wife had a monthly income of $1,529.83 per month; and (6) Husband had a monthly income of $2,515.00 per month. *See* Master's Report & Recommendation, 2/27/2013, at 4-6.

The Master then made the following conclusions of law: (1) the date of separation was July, 2008, when Husband moved in with his paramour and no longer stayed at Wife's residence from that date forward; (2) the total value of the marital assets was $47,378.00, the appropriate distribution scheme was a 55%/45% division in favor of Wife; (3) Husband should pay alimony in the amount of $185 per month to Wife for four years; and (4) Husband should pay 50% of Wife's counsel fees, in the amount of $1,185.00. *See id.* at 8-31.

Husband filed exceptions to the Master's report and recommendation on March 5, 2013, and later, filed amended exceptions on March 14, 2013. The trial court conducted a hearing on April 29, 2013. On August 15, 2013, the court entered an order, dismissing all 19 exceptions raised by Husband.

---

[2] Husband also had a commercial driver's license.

The court also fully adopted the terms and provisions of the Master's report and recommendation. Husband filed this appeal.[3]

Husband's first four issues concern the equitable distribution of the parties' marital estate. Therefore, we begin with the following:

> We review an equitable distribution order for an abuse of discretion. **Biese v. Biese**, 2009 PA Super 142, 979 A.2d 892, 895 (Pa. Super. 2009).
>
> > A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.
>
> **Id.** (internal citations and quotations omitted).

**Reber v. Reiss**, 42 A.3d 1131, 1134 (Pa. Super. 2012), *appeal denied*, 62 A.3d 380 (Pa. 2012).

---

[3] On September 13, 2013, the trial court ordered Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Husband filed a concise statement on September 30, 2013. In a related matter, the court entered a divorce decree on December 11, 2013.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. ***Sternlicht v. Sternlicht***, 2003 PA Super 95, 822 A.2d 732, 742 (Pa. Super. 2003), *aff'd*, 583 Pa. 149, 876 A.2d 904 (Pa. 2005). We are also aware that "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." ***Moran v. Moran***, 2003 PA Super 455, 839 A.2d 1091, 1095 (Pa. Super. 2003) (*citing* ***Simeone v. Simeone***, 380 Pa. Super. 37, 551 A.2d 219, 225 (Pa. Super. 1988), *aff'd*, 525 Pa. 392, 581 A.2d 162 (Pa. 1990)).

***Childress v. Bogosian***, 12 A.3d 448, 455-456 (Pa. Super. 2011).

In Husband's first issue, he claims the trial court erred in determining that the date of separation was July 2008, because the parties failed to reside together, hold themselves out as a married couple, and function as husband and wife since November 2000, when Wife left the marital residence. Specifically, Husband claims that in November 2000, Wife left with the two children and did not tell him where she was going. He states he eventually was able to locate his family at an apartment in Phillipsburg, but that residence "was hers and not theirs." Husband's Brief at 10. Husband asserts that it "was at this point that [he] believes the parties had truly separated." *Id.* Additionally, he states that over the next several years, he was allowed to stay at the apartment so he could spend time with the children, but he was forced to sleep on the floor or couch, the parties never had a physical relationship, and they did not do anything socially or otherwise as a married couple. *Id.*

"The determination of the separation date obviously impacts the value of property in that [o]nly property acquired prior to the date of final separation is marital property and therefore subject to equitable distribution." ***McCoy v. McCoy***, 888 A.2d 906, 911 (Pa. Super. 2005) (citation and internal punctuation omitted). Section 3103 of the Pennsylvania Divorce Code defines "separate and apart" as a "[c]essation of cohabitation, whether living in the same residence or not. In the event a complaint in divorce is filed and served, it shall be presumed that the parties commenced to live separate and apart not later than the date that the complaint was served." 23 Pa.C.S. § 3103.

> [This] definition contains specific language pertaining to a **presumption** that the date of separation, *i.e.*, the date on which the parties begin living separate and apart, **is established upon the filing and serving of a divorce complaint, unless an earlier date can be substantiated through the presentation of evidence confirming an earlier date**. "A presumption … is a procedural device which not only permits an inference of the 'presumed' fact, but also shifts to the opposing party the burden of producing evidence to disprove the presumed fact. Failure to meet this burden of production will normally result in [a decision] … in favor of the party invoking the presumption." ***Commonwealth v. Slaybaugh***, 468 Pa. 618, 364 A.2d 687, 689 (Pa. 1976). In short, "**the party attempting to rebut the presumption has the burden of proof**." ***CW v. LV***, 2001 PA Super 332, 788 A.2d 1002 (Pa. Super. 2001).

***McCoy***, 888 A.2d at 912 (emphasis added).

In the present case, the Master and the trial court found that the date of separation was July, 2008, which was the last time Wife had contact with Husband because Husband moved in with his paramour and no longer

stayed at Wife's apartment. *See* Master's Report & Recommendation, 2/27/2013, at 9; Trial Court Opinion, 8/15/2013, at 2-3. While Husband's testimony tends to support a finding that he and Wife separated in November, 2000, Wife's testimony contradicted his testimony in many key areas. Wife testified she left with the parties' two children at that time because the heat was not working at the marital home. N.T., 9/21/2012, at 31-32. Additionally, Wife stated that when Husband was not residing with her, he occasionally slept at the former marital residence because he was working on the house. *Id.* at 32. She also testified that during this period, she would often pick him up from work at "[t]wo o'clock in the morning or 2:30 in the morning in the middle of nowhere." *Id.* at 46. Lastly, Wife indicated that she deemed herself to be married to Husband up until July of 2008. *Id.*

Both parties agree that from November, 2000 until July, 2008, Husband would periodically stay at Wife's residence. *Id.* at 33, 54. Husband alleged there were no physical relations between the parties, and that he stayed at Wife's apartment out of respect for the children. **Id.** at 55, 91. Husband did not institute a divorce proceeding during this period. Wife filed her complaint in divorce in September, 2010, using July, 2008 as the date of separation. As noted by the Master, Husband did not contest this date in his filings. *See* Master's Report & Recommendation, 2/27/2013, at 10.

While the state of the parties' marriage may have been dissolving during the relevant eight-year period, our review of this issue is governed in great part by the facts as determined by the Master and the trial court. **See Childress**, **supra**. Moreover, we must defer to the trial court's credibility determinations and findings of fact, so long as those facts are supported by competent evidence in the record, and our standard of review is based on an abuse of discretion. **Id.** Given the Divorce Code's definition of "separate and apart," and applicable case law, we conclude there is no abuse of discretion in the court's finding that the date of separation was July, 2008. Likewise, we agree with the trial court that Husband failed to present sufficient evidence that the date of separation occurred in 2000. Accordingly, Husband's first claim fails.

Next, Husband contends the trial court erred in determining he had a greater capacity to acquire future income and assets, where the evidence indicated that Wife is employed and Husband is unemployed with little prospect of employment in his given field in the near future. Husband's Brief at 11. He states that Wife has two jobs, as a tax preparer and arts and crafts seller, whereas he has been laid off from his job as a heavy equipment operator since 2012 and has yet to find work. Husband asserts "there is little to no factual basis on the record to support this assertion by the Master. The only possible reason for this determination by the Master is that [Husband] is approximately nine (9) years younger than [Wife]." **Id.** at 12.

Moreover, he argues that "even if that were the case, [his] job prospects …

in central Pennsylvania are minimal due to federal regulations and his job is

considerably harder on his body than sitting at a desk preparing taxes." *Id.*

at 13.

Section 3502 of the Divorce Code governs the equitable distribution of

marital property and provides, in relevant part:

> Factors which are relevant to the equitable division of
> marital property include the following:
>
> …
>
> (3) The age, health, station, amount and sources of income,
> vocational skills, employability, estate, liabilities and needs of
> each of the parties.

23 Pa.C.S. § 3502(a)(3).

With respect to this factor, the Master opined:

> At the time of the Master's hearing [on September 21, 2012,]
> Husband was 57 years old and in reasonably good health.
> Husband was unemployed at the time of the hearing and had
> last been employed through Falls Creek Energy as a heavy
> equipment operator; however, he was la[id] off during the spring
> of 2012. Husband's primary source of income at the time of the
> Master's hearing was unemployment compensation of $878.00
> which was received every two weeks. Husband expected his
> unemployment compensation to expire in October, 2012,
> although Husband indicated that an extension of these benefits
> was a possibility. Husband has a work history of being a heavy
> equipment operator for several years for Sky Haven. Husband
> also possesses a commercial driver's license and has indicated
> that he has experience doing mechanical work. Given Husband's
> work history and training and the CDL that Husband has,
> Husband possesses skills and experience that would make him
> employable.

At the time of the Master's hearing, Wife was 66 years old. Wife testified that she is in poor health suffering from a variety of ailments including clogged arteries, mini-strokes, issues with diabetes, arthritis and deteriorated discs in her back. Wife is self-employed as a tax preparer. Additionally, she receives $724.00 per month in Social Security benefits. Testimony also indicated that Wife does make craft type items to sell at craft fairs and festivals. Wife indicated on her Income and Expense statement that her monthly income from all sources is $1,177.00.

Based on the testimony and information provided, both parties possess skills which make them employable and able to participate in the workforce. Since Wife is approximately nine (9) years older than Husband and Wife suffers from several medical conditions and is in poor health, Husband most likely would be more employable and have the longer period of time in which to earn an income.

Master's Report & Recommendation, 2/27/2013, at 11-12 (record citations omitted).

The trial court determined the Master properly addressed this factor and found the following:

The Divorce Code requires that the amount and sources of income must be considered in the determination of the equitable distribution of the parties' assets. 23 Pa.C.S.A. § 3502(a)(3). The Master discussed the sources of income for both parties, including a comparison between [Husband]'s and [Wife]'s income, training and skill level of both parties, and the standard of living of the parties. The Master's findings are supported by the record and the exhibits submitted by the parties.

Trial Court Opinion, 8/15/2013, at 3-4. Contrary to Husband's argument, we discern no abuse of discretion and agree with the trial court's conclusion that the Master's findings are supported by the record. We reiterate that the Master had the opportunity to observe and assess the behavior and

- 10 -

demeanor of the parties, and therefore, his credibility determination with respect to the income capability of the parties should be given great consideration. **See Childress**, **supra**. Accordingly, Husband's claim of trial court error on this issue is without merit.

In Husband's third argument, he claims the court erred by improperly including values in the marital property that should have been excluded pursuant to 23 Pa.C.S. § 3501(a)(4). Husband's Brief at 13. Specifically, he states that prior to the Master's hearing, the parties submitted memoranda to the Master with valuations listed for all property owned by the parties. **Id.** In his pre-trial statement, Husband listed certain insurance policies in the "marital" property section. However, relying on **Keller v. Keller**, 760 A.2d 22 (Pa. Super. 2000), Husband asserts that since the date of separation of the parties is at issue, the trial court should have considered a portion of their value as acquired post-separation, and therefore, "non-marital" property pursuant to Section 3501(a)(4). **Id.** at 13-14, 15. Moreover, Husband argues that because there was no surprise or burden at the time of the Master's hearing and the inventory reflected the current value of the property at that time, these values could be easily adjusted based on the determination on the date of separation. **Id.**

The Divorce Code defines "marital property," in pertinent part, as follows:

### § 3501. Definitions

**(a) General Rule.**—As used in this chapter, "marital property" means all property acquired by either party during the marriage and the increase in value of any nonmarital property acquired pursuant to paragraphs (1) and (3) as measured and determined under subsection (a.1). However, marital property does not include:

…

(4) Property acquired after final separation until the date of divorce, except for property acquired in exchange for marital assets.

23 Pa.C.S. § 3501(a)(4).

Here, the record reveals the following. At the beginning of the Master's hearing, the parties stipulated to certain values for Wife's Prudential insurance policy, Husband's two Prudential insurance policies, and Husband's M&T Bank IRA. **See** N.T., 9/21/2012, at 4-5. Subsequently, during the proceeding, Husband's counsel attempted to introduce the two insurance policies and the IRA into evidence, which included different marital values for the insurance policies than were previously stipulated to at the beginning of the hearing. **Id.** at 68-72. Husband's counsel claimed to have based the values on the fact that the date of separation was November, 2000, and therefore, any contributions made by Husband after that date were non-marital property. **Id.** at 69-70. The Master noted Wife's objection to this "re-valued" evidence, and requested the parties to argue the issue in their briefs before admitting the exhibits into evidence. **Id.** at 72-73.

In his report, the Master opined:

As the parties had separated in July 2008, there were very few marital assets left for distribution at the time of the Master's hearing. Prior to the taking of testimony, the parties, on the record, set forth a stipulation as to the value of the remaining marital assets…. The parties agreed to the following values as per their stipulation: Wife's Prudential life insurance policy - $11,253.18; Husband's Prudential life insurance policy #414 - $21,352.26; Husband's Prudential life insurance policy #992 - $7,465.77; and an M&T IRA with Sky Haven that was Husband's - $7,306.90.

…

Subsequent to the entry of the stipulation into the record, during Husband's testimony, counsel then moved to enter into the record [Husband]'s Exhibits B and C, which set forth different marital values for Husband's Prudential policies based on payments Husband made throughout the separation of the parties. [Husband]'s Exhibit B is in regard to the #992 policy and indicates that a marital value of $3,989.22 or $3,476.55 less than the stipulated value of that policy. [Husband]'s Exhibit C is in regard to Husband's Prudential policy #414 and it lists a marital value of $12,998.39 which is $8,353.87 less than the stipulated value of that policy. It should be noted that the calculations that are done on Exhibits B and C are typed calculations based on Husband's assertion as to a date of separation in November of the year 2000 and the amount of post-separation contributions of Husband to those policies from that date in November 200[0] forward.

Wife, through her counsel, raised objection to the admission of Exhibits B and C in this matter indicating that in the pre-trial filings Husband did not list a non-marital component to these insurance policies. Wife cites to the Pennsylvania Rules of Civil Procedure, particularly Rule 1920.33(b)(1)(4).[4] Wife's

_____

[4] Rule 1920.33(b)(1), (4) provides:

(b) Within the time required by order of court or written directive of the master or, if none, at least sixty days before the scheduled hearing on the claim for the determination and distribution of property, each party shall file and serve upon the

*(Footnote Continued Next Page)*

contention is that Husband's Exhibits B and C should be barred because Husband did not reveal these Exhibits in his pre-trial documentation. Wife further goes on to state that in the pre-trial statements Husband does not assert that there is a non-marital component to the policies or that Husband was claiming an offset from the premiums paid as to the value of the policies that Husband now claims.

Husband cites that the case of Keller v. Keller, 760 A.2d 22 (Pa. Super. 2000) stands for the position that in equitable distribution cases the outcome of creating an accurate record is more important tha[n] specific rules of procedure. Husband claims that even though a non-marital component was not listed in his pre-trial filings, he should be allowed to make argument at the time of the Master's hearing as to any non-marital portions of the insurance policies.

_(Footnote Continued)_ ————————

other party a pre-trial statement. The pre-trial statement shall include the following matters, together with any additional information required by special order of the court:

(1) a list of assets, which may be in chart form, specifying:

(i) the marital assets, their value, the date of the valuation, whether any portion of the value is non-marital, and any liens or encumbrances thereon; and

(ii) the non-marital assets, their value, the date of the valuation, and any liens or encumbrances thereon;

…

(4) a list of all of the exhibits which the party expects to offer in evidence, each containing an identifying mark. Any exhibits that do not exceed three pages shall be attached to the pre-trial statement, and any exhibits which exceed three pages shall be described[.]

Pa.R.C.P. 1920.33(b)(1), (4).

In analyzing this situation and looking at the arguments of both of counsel as well as the case law and the Exhibits provided, it is the recommendation of the Master that Husband's claims in asserting non-marital portions of the insurance policies be denied. A review of the case Keller v. Keller shows that there are factual distinctions between the situation in Keller and the situation between [Husband and Wife]. In Keller the issue was the value of Husband's retirement benefit earned as a Pennsylvania State Trooper. *See* Keller at 760 A.2d 25. Wife filed exceptions to the Master's report in Keller and did not submit a brief on those exceptions as ordered by the Court. *See* Id. Husband then argued that Wife's position on the exceptions regarding Husband's pension should be waived on appeal due to Wife's failure to submit a brief as ordered by the Court. *See* Id. The Superior Court noted "although we do not condone wife's apparent disregard for the trial court's direction to file a brief in support of her exceptions, because husband does not cite to any applicable local rules or case law endorsing such waiver, we fail to find that wife has waived her issues on appeal." Id. The Superior Court also notes that in the case of Fielding v. Fielding, 685 A.2d 178, 179-180 [(Pa. Super. 1996)] that appellate courts will not review undeveloped and unsupported arguments. *See* Id. The Superior Court remanded the case in Keller because the Master recommended that a value of $38,250.26 be used as the marital portion of husband's pension when a present value of husband's retirement benefit, including employer's contributions as reflected by the statement of account totaled $287,494.25. *See* Id. Due to the substantial difference in the figures the court determined that the matter needed to be remanded due to the significant economic impact that the discrepancy in value would have. *See* Id. pg. 26.

The language that Husband's counsel in the present case relies on from the Keller decision merely states that the Superior Court would not allow husband to claim an issue had been waived when husband had no rule indicating that was the remedy for failure to file a brief. In this situation with [Husband and Wife], Wife cites Pennsylvania Rule[] of Civil Procedure 1920.3(b)(1)(4) indicating that Husband's counsel should not be allowed to assert the values as non-marital when they were not previously asserted in Husband's pre-trial filings. Unlike Keller, there are specific rules and specific remedies cited by [Wife] here as to why relief should be granted.

The information contained in Husband's Exhibits B and C is also problematic given Husband's assumption that the date of separation would be in November 2000. As is previously set forth in this report, Wife testified credibly that the date of separation should be July 2008, as that was the final date that Husband had resided with her. Husband admits that he would stay at Wife's residence periodically until July 2008, after that time he acknowledges he did not return to Wife's residence as he moved in with his paramour, Marjorie Hawkins. Given this discrepancy in the date of separation, the calculations used on Exhibits B and C do not accurately reflect contributions from the date of separation forward.

In examining the stipulation entered into the record by the parties, it is important to note what was set forth. On page 4 of the transcript, Husband's counsel indicates "I think we've agreed if counsel doesn't mind that the policy Prudential policy number 992 the value of that is $7,465.77 that is Husband's policy." Husband's counsel further indicates "the policy number I'll call it #414 also with Prudential, Husband's policy, is valued for the purposes of this hearing at $21,352[.]26. The IRA in M&T Bank we have valued at $7,306.90. And [Wife]'s Prudential life … we're valuing at $11,253.18. That is the sum total of the marital or not marital but depending on the testimony." *See* Tr. pg. 4. It is plain from the language that is set forth that the parties had agreed as to these higher values for the insurance policies and the IRA. The next statement that is made clearly shows that the dispute was not centered on the insurance policies, but on the IRA, when Husband's counsel states on pages 4 and 5 of the transcript "I don't think there is going to be any question on the insurance policies. There's some question … on the IRA depending on … what you determine to be the date of separation. That [] will be clearer as the case goes on." *See* Tr. pgs. 4-5. From the facts in the record, had the date of separation from November 2000 been used, then Husband's IRA would not be marital property because said IRA would have accrued following the separation of the parties. However, with a date of separation in July 2008, Husband's IRA accrued prior to separation and the amount that was stipulated to by the parties should be used as the value.

It should also be noted that in the Keller case that Husband relies on to indicate that non-marital portions of these assets should be considered, the parties never stipulated or

agreed to the values of any of the assets. The main asset in question in Keller was husband's State Police pension and wife contested the lower value of that pension. In this case, not only did the parties enter into a stipulation as to the value of assets, Husband's counsel indicates that the dispute as to date of separation would mainly center on the value of the IRA and would not affect the value of the insurance policies. Given the stipulation of the parties, the distinguishing factors between the Keller case and the present case, and the provisions set forth in the Pennsylvania Rules of Civil Procedure cited by Wife, it is recommended that the stipulated values of these assets be used by the Court.

Master's Report & Recommendation, 2/27/2013, at 17-21.

We conclude the Master's recommendation properly addresses Husband's argument. Moreover, as the trial court emphasized, "the parties **agreed** to the valuation of the life insurance[] policies and IRA at issue in a stipulation discussed prior to testimony." Trial Court Opinion, 8/15/2013, at 5 (emphasis added). Therefore, the court did not abuse its discretion by including certain values with respect to the insurance policies and IRA in the marital property pursuant to Section 3501(a)(4).

In Husband's fourth argument, he claims the court erred in creating a distribution scheme where Wife receives 55% of the marital estate because the record does not demonstrate a rational basis for the unequal distribution of marital assets. Husband's Brief at 16. Husband states that based on the statutory factors as set forth in Section 3502 of the Divorce Code, "it is inequitable to punish him by awarding him only 45% of the marital property[.]" *Id.* at 17. Specifically, he argues the Master erred with respect to the following factors: (1) the length of marriage; (3) the age, health,

- 17 -

station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties; (5) the opportunity of each party for future acquisitions of capital assets and income; (9) the standard of living of the parties established during the marriage; and (10) the economic circumstances of each party at the time the division of property is to become effective. With regard to these factors, Husband states the Master improperly measured the length of the marriage and did not consider his current unemployment status. *Id.* at 17-19.

"In the context of an equitable distribution of marital property, a trial court has the authority to divide the award as the equities presented in the particular case may require." *Reber*, 42 A.3d at 1137 (citation omitted).

As provided in his report, the Master thoroughly analyzed the 11 enumerated factors of Section 3502 to determine the equitable distribution split. *See* Master's Report & Recommendation, 2/27/2013, at 7-13. The trial court found the Master had considered all of the relevant statutory factors and did not abuse his discretion. *See* Trial Court Opinion, 8/15/2013, at 5. We reiterate that "it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." *Childress*, 12 A.3d at 455. We agree and conclude Husband's claim of trial court error is without merit, and the court's determinations are supported by the record. Accordingly, Husband's argument fails.

In Husband's fifth claim, he contends the court erred in awarding Wife $185.00 per month in alimony because the property she is to receive by equitable distribution should be more than sufficient to provide for her needs. Husband's Brief at 19. He states that the record demonstrates he is unemployed, due to the economy and by no fault of his own. *Id.* at 21. Moreover, Husband argues Wife is capable working as a tax preparer, and has other financial means to support herself, "especially after the marital property is distributed." *Id.* He asserts there is no rationale basis on the record for the granting of alimony to Wife.

With respect to alimony, we are guided by the following:

Our standard of review over an alimony award is an abuse of discretion. ***Teodorski v. Teodorski***, 2004 PA Super 313, 857 A.2d 194, 200 (2004), *quoting **Moran v. Moran***, 2003 PA Super 455, 839 A.2d 1091, 1096-1097 (Pa. Super. 2003).

We previously have explained that 'the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met.' Alimony 'is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.' Moreover, 'alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.'

***Id.*** (emphasis in original).

In determining whether alimony is necessary, and in determining the nature, amount, duration and manner of payment of alimony, the court must consider numerous

- 19 -

> factors including the parties' earnings and earning capacities, income sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage.
>
> *Teodorski*, *supra* at 200, *quoting* **Anderson v. Anderson**, 2003 PA Super 152, 822 A.2d 824, 830-831 (Pa. Super. 2003); 23 Pa.C.S.A. § 3701, **Alimony**.

*Gates v. Gates*, 933 A.2d 102, 106 (Pa. Super. 2007), *appeal denied*, 980 A.2d 608 (Pa. 2009).

Here, the Master addressed all of the factors set forth in 23 Pa.C.S. § 3701 and concluded Wife was entitled to an award of alimony based upon the following factors: (1) Husband appears to have the greater earning capacity due to his age, job experience, and job training; (2) Husband is younger and in better physical health than Wife; (3) though Husband was unemployed at the time of the hearing, he had acquired skills as a mechanic, CDL driver, and heavy equipment operator whereas due to Wife's poor health, it is unlikely that she would be able to be retrained through further education for a different career; (4) Wife has been receiving spousal support from Husband in the amount of $185.00 per month to help meet her basic obligations, Wife testified that she would not be able to meet her needs and obligations without the receipt of spousal support, and Husband, despite being unemployed, continues to pay the spousal support; (5) Husband was abusive during the marriage, abused alcohol, and left the marital residence to reside with his paramour; (6) the parties have few marital assets to divide

and given Wife's age and physical health and the limited marital assets, Wife would not have significant property to ensure that she could continue to meet her needs as she was accustomed to during the marriage; and (7) Wife's employment status is tied directly to her health status and given her age and health concerns, the ability of Wife to remain self-sufficient through her employment would be in question. *See* Master's Report & Recommendation, 2/27/2013, at 23-28. The Master concluded:

> Given the factors, the testimony and evidence presented at the time of the Master's hearing, it is determined that said factors weigh in favor of an award of alimony to Wife in this case. It is the recommendation of the Master that Husband pay alimony in the sum of $185.00 per month for a period of four (4) years.

*Id.* at 28.

> The trial court confirmed the Master's recommendation, noting:

> Most importantly, the Master found that [Husband] possessed skills and experience that make him more employable than [Wife]. Moreover, [Husband] is in better health and nine (9) years younger than [Wife], which provides [him] with a greater earning capacity. [Wife] is also experiencing serious health concerns which impact her ability to remain self-sufficient via her self-employment.

> The Court finds that the Master's Report analyzed the factors as set forth in the Divorce Code in detail and carefully considered the facts presented. The Court agrees with the Master that alimony is necessary in the case to provide [Wife] with the necessities of life, and refuses to disturb the Master's findings.

Trial Court Opinion, 8/15/2013, at 6-7.

A review of the record indicates that the Master's findings are supported by competent evidence. Moreover, we conclude the trial court's

- 21 -

decision was not an abuse of discretion under these circumstances. The court agreed with the Master that the Section 3701 factors weighed in favor of awarding Wife alimony. Further, the award was not an exorbitant amount, as Husband had previously been paying Wife the same amount in spousal support, despite being unemployed at that time, and was for a limited four-year period until Wife turns 70. We find the alimony award was in accordance with ensuring that the reasonable needs of Wife, who is unable to support herself through appropriate employment due to age and health status, were met. *See Gates*, *supra*. Accordingly, we conclude that Husband is due no relief on this issue.

In Husband's penultimate argument, he claims the court erred in determining Wife is in need of having any of her counsel fees paid because the property she is to receive by equitable distribution should be more than sufficient to cover these fees. Husband's Brief at 21. He states that because both parties have incurred substantial attorney fees in relation to the same size of the marital estate, "both parties should be able to cover their own attorney fees and have money left over to continue on with their lives without having any major economic issues." *Id.* at 22.

With respect to challenges to the award of counsel fees:

[O]ur standard of review is, once again, an abuse of discretion. *Busse v. Busse*, 2007 PA Super 100, 921 A.2d 1248, 1258 (Pa. Super. 2007). Furthermore:

The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse

- 22 -

to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another.

Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

*Busse*, *supra* at 1258, *quoting* *Teodorski*, *supra* at 201 (additional citation omitted); *see also* 23 Pa.C.S.A. § 3702, **Alimony pendente lite, counsel fees and expenses**. Counsel fees are only to be awarded upon a showing of need. *Busse*, *supra* at 1258, *citing* *Teodorski*, *supra* at 201. In essence, each party's financial considerations dictate whether such an award is appropriate. *Id.*, *citing* *Plitka v. Plitka*, 714 A.2d 1067, 1070 (Pa. Super. 1998).

*Gates*, 933 A.2d at 109.

Here, Wife set forth in her Exhibit 3 that she had accrued counsel fees in the amount of $2,371.50. The Master stated that after considering the Section 3702 factors, "as well as the facts and evidence and testimony in this case, it is recommended that Husband pay 50% of Wife's counsel fees." Master's Report & Recommendation, 2/27/2013, at 29. The trial court agreed with the Master, stating the "Master based his findings on [Husband]'s ability to pay, and the financial resources available and financial considerations of both parties." Trial Court Opinion, 8/15/2013, at 7. Again, we agree with the decision of the trial court. Both the Master and the court were aware of the parties' respective financial situations and arrived at a reasonable determination. Accordingly, we conclude the trial court did not abuse its discretion in awarding $1,185.75 in counsel fees to Wife.

- 23 -

In Husband's final argument, he argues the trial court erred in determining that he has the ability to pay Wife's alimony and/or counsel fees. Husband's Brief at 22. He merely directs this Court to his previous arguments on those issues. *Id.* at 22-23. We disagree with Husband's bald assertion. As analyzed above, the Master and trial court both found that Husband possessed the ability to pay Wife alimony and attorney's fees despite his current unemployment status. We need not address this argument further. Accordingly, Husband's final argument fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2014