J-S62014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| EUGENE B. MILLER, III | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DEBORAH J. MILLER | |
| Appellee | No. 676 MDA 2017 |

Appeal from the Order Entered January 13, 2017
In the Court of Common Pleas of York County
Criminal Division at No: 2012-FC-001170-15

BEFORE:  STABILE, MOULTON, and STRASSBURGER, [*] JJ.

MEMORANDUM BY STABILE, J.:  **FILED MARCH 27, 2018**

Appellant, Eugene B. Miller, III ("Husband"), appeals from the January 13, 2017 order entered in the Court of Common Pleas of York County ("trial court") awarding Deborah J. Miller ("Wife") slightly over fifty percent of the marital estate in its equitable distribution award, and directing Husband to pay monthly alimony of $1,833.60 to Wife until she turns 67.  We affirm the equitable distribution award.  We remand for further proceedings concerning Wife's alimony award.  Specifically, we direct the trial court to (1) address what effect, if any, Wife's post-separation receipt of an inheritance of $61,000.00 has on the amount of alimony that Husband must pay, and (2) perform an item-by-item evaluation of the criteria for alimony within 23 Pa.C.S.A. § 3701(b).

_____

[*] Retired Senior Judge assigned to the Superior Court.

On June 26, 2012, Husband filed a complaint in divorce seeking equitable distribution of marital property. Wife filed a petition seeking, *inter alia*, alimony and counsel fees. On August 24, 2015, a court-appointed master heard testimony from both parties. On June 21, 2016, the master entered a report with findings of fact and recommendations. We summarize the master's findings of fact and recommendations as follows.

Both parties are in their fifties. Both parties graduated high school but did not attend college. Wife was married once before marrying Husband, and she has two children from the previous marriage. Her son from her first marriage, Matthew, lives with her along with Matthew's son, Devon. Matthew does not pay her rent or money to support Devon. Husband and Wife had one child of their own who is now an emancipated adult. Master's Report and Recommendation ("Master's Report"), 6/21/16, at 3-4, 6.

Husband was a chef until 2005. From 2005 through 2014, he was a general manager for a food service contractor. Since 2014, he has been the director of dining services at Quarryville Presbyterian Retirement Community. He earned $94,040.00 in 2014 and was on track to earn more than $100,000.00 in 2015. The master calculated Husband's net monthly income to be $5,509.00. *Id.* at 4, 19.

Prior to the marriage, Wife obtained a real estate sales license and worked as a server in a restaurant, a law office secretary, and an assistant in a real estate office. She renewed her real estate license during the marriage. She is currently unemployed and has not actively sought out employment.

She applied for Social Security Disability benefits during divorce proceedings but was denied due to lack of employment history within the last ten years. *Id.* at 4-5.

During the marriage, Husband and Wife jointly owned a residence in Hanover, Pennsylvania. In 2003, the parties jointly filed for bankruptcy. To keep the marital residence, and to pay an automobile loan, they jointly borrowed $57,000.00 from Husband's mother and co-signed a mortgage on the residence to secure the debt. At the time of separation in 2011, the parties had paid down the debt to $29,916.00. Husband made several more payments after separation, reducing the debt to $28,330.00, but made no further payments after January 2012. The marital residence was sold in the fall of 2015, by which time interest of $2,408.00 had accrued on the debt. To permit the sale of the residence, Husband's mother voluntarily marked the mortgage satisfied. It is unclear whether she intended to forgive the debt or merely to release her security for payment. *Id.* at 10.

Husband is in good health. Wife testified that she suffers from multiple medical problems, including fibromyalgia, sleep apnea, arthritis, irritable bowel syndrome, a deviated septum, lymphedema in her legs, and cellulitis. She did not offer medical testimony in support of her claims. Husband provided medical insurance for Wife, but coverage terminated upon entry of the divorce decree. *Id.* at 4-5.

Following the parties' separation, Wife received an inheritance of approximately $61,000.00, which she used to pay living expenses, and she has about $3,500.00 left. *Id.* at 8.

Husband requested credit for assuming the debt of approximately $30,000.00 that both Husband and Wife still owed to Husband's mother. The master recommended that Husband not receive credit for this debt and that Wife receive $54,624.00, slightly over half of the net marital estate of $108,579.00. *Id.* at 10-11.

The master determined that Wife should receive alimony because most of the marital assets are non-liquid[1] and Wife is capable of working only part-time. If she worked for minimum wages of $7.25 per hour, the master wrote, she would gross $1,257.00 per month working full-time, so she stood to gross less than this amount working part-time. The master determined that Wife could work part-time (35 hours per week), thus making gross income of $1,100 per month with net income of $925 per month. The master also determined that Wife's own living expenses were between $1,800 to $2,000

---

[1] The master observed that most of the marital estate consists of retirement assets and $16,091.00 in cash from the sale of the marital residence. Master's Report at 20-21. Wife will need the cash from the sale of the real estate to pay legal fees and other current expenses. *Id.* at 21. She cannot access the retirement money until age 62 without incurring either penalties or taxes. *Id.*

per month.[2]  Based on these computations, the master recommended that Wife receive alimony of $1,000.00 per month until age 62, when she can begin receiving Social Security retirement benefits.  He also recommended that Wife receive no counsel fees, costs or expenses.  *Id.* at 19-22.

Both parties filed timely exceptions to the master's report.  On January 13, 2017, following oral argument, the trial court entered an order denying Husband's exceptions and denying in part and granting in part Wife's exceptions.  Specifically, the trial court increased Wife's monthly alimony to $1,833.60 and ordered Husband to pay alimony until Wife turned 67 (instead of 62, as the master recommended).  The trial court calculated monthly alimony as $1,833.60, forty percent of the difference between the master's findings of Husband's monthly net income ($5,509.00) and Wife's monthly earning capacity ($925.00).  Otherwise, the trial court adopted the master's findings of fact and recommendations, including the master's determination that Husband should not receive credit for assuming the debt that both parties owed to Husband's mother.  Husband filed a timely notice of appeal, and both Husband and the trial court complied with Pa.R.A.P. 1925.

Husband raises five issues for our review, which we repeat verbatim:

I.    Whether the trial court committed abuse of discretion and error of law in failing to consider and address the stipulated

---

[2] The master stated that this sum did not include money to support her son or grandson, because "she should be seeking contribution from them or from the Pa. Dept. of Welfare if she chooses to provide them with a home." Master's Report at 19 n. 5.

marital debt of the parties in the equitable distribution scheme and not considering and ordering some contribution from Wife for the repayment of such debt.

II.    Whether the trial court erred and abused its discretion in not considering the dissipation of assets Husband proved against Wife in determining the equitable distribution scheme as well as in the length and amount of alimony awarded.

III.   Whether the trial court committed abuse of discretion in determining that Husband should pay alimony to Wife until she is 67 when she would be entitled to social security benefits at 62. Such finding results in the Husband paying to Wife support and or alimony benefits for nearly 20 years or the length of the marriage which is inequitable.

IV.    The trial court erred and abused its discretion in not considering that Wife is residing with other individuals who should be contributing to the household expenses, and failure of [Wife] to require such contribution should be considered in the calculation of the alimony payment.

V.     Whether the trial court erred and abused its discretion in not considering Wife's receipt of inheritance after the date of separation in determining the alimony and equitable distribution.

Husband's Brief at 5-6 (capitalization omitted).

Wife did not file a brief in this Court. Husband's first argument and part of his second argument concern the equitable distribution of the parties' marital assets. His remaining arguments relate to his alimony obligations.

We first address Husband's equitable distribution arguments. Husband argues that the trial court abused its discretion in the course of determining equitable distribution by denying Husband credit for assuming the debt that both parties owed to Husband's mother. "In making its decision regarding equitable distribution, the trial court must consider at least the eleven factors

enumerated in [the Divorce Code's equitable distribution statute,] 23 Pa.C.S.A. § 3502(a)." ***Wang v. Feng***, 888 A.2d 882, 887 (Pa. Super. 2005). However,

> there is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors [in the Divorce Code] serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

***Id.*** The trial court has broad discretion when fashioning an award of equitable distribution. ***Dalrymple v. Kilishek***, 920 A.2d 1275, 1280 (Pa. Super. 2007). Our standard of review in assessing an equitable distribution order is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." ***Smith v. Smith***, 904 A.2d 15, 19 (Pa. Super. 2006). We will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." ***Wang***, 888 A.2d at 887. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. ***Id.*** "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." ***Schenk v. Schenk***, 880 A.2d 633, 639 (Pa. Super. 2005) (citation omitted).

Moreover, the trial court's province is to weigh the evidence and decide credibility, and this Court will not reverse those determinations so long as they are supported by the evidence. **Sternlicht v. Sternlicht**, 822 A.2d 732, 742 (Pa. Super. 2003). "A master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." **Moran v. Moran**, 839 A.2d 1091, 1095 (Pa. Super. 2003).

In this case, the master recommended that Husband not receive credit for assuming the debt to his mother, because both parties remain equally liable for repayment, and it is possible that neither party will pay anything more. Master's Report at 10-11. Husband, the master reasoned, should not receive credit for a debt that he might unilaterally decide not to pay. The trial court accepted the master's rationale. Trial Ct. Findings of Fact and Order ("Order"), 1/13/17, at 4. In our view, this decision was a proper use of discretion, because there was a rational explanation underlying this decision. The trial court was understandably wary of giving Husband credit for an act that he had not yet performed and might later find inconvenient to carry out. Husband's "assumption" of debt to his mother might have been a pretext for depriving Wife of her fair share of the marital estate. For these reasons, the trial court's decision was not "manifestly unreasonable or the result of

partiality, prejudice, bias, or ill will." **Wang**, 888 A.2d at 887. Husband's first argument fails.[3]

Next, Husband asserts that in the course of determining equitable distribution, the trial court abused its discretion by failing to consider that Wife dissipated marital assets by failing to contribute to the marital household during the final half of the parties' marriage. According to Husband, (1) Wife was able to work but refused to do so, (2) Wife stopped caring for the marital home and the parties' child, and (3) instead of working or behaving responsibly, Wife regularly smoked and drank and often passed out after combining alcohol and prescription medications. Appellant's Brief at 16-17. The master determined that Wife's smoking and drinking might have exacerbated her health problems, thereby dissipating the marital estate, "but it is impossible to quantify the degree to which Wife's health issues were directly related to her smoking and drinking without more detailed medical evidence." Master's Report at 15. The trial court adopted this finding. Order at 5.

The equitable distribution statute requires the trial court to consider, *inter alia*, "the contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including

---

[3] At the conclusion of this argument, Husband added that his assumption of debt should have led the trial court to reduce his alimony payments. Once again, this argument fails because he might unilaterally decide not to pay this debt.

the contribution of a party as homemaker." 23 Pa.C.S.A. § 3502(a)(7). The Divorce Code does not specify a particular method of valuing assets. The trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. *Smith v. Smith*, 653 A.2d 1259, 1265 (Pa. Super. 1995). In determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property. *Litmans v. Litmans*, 673 A.2d 382, 395 (Pa. Super. 1996).

Here, while Husband's argument that Wife's smoking and drinking dissipated the marital estate has some intuitive appeal, he failed to present sufficient evidence demonstrating the value of the marital assets that Wife dissipated through these habits. Thus, the trial court acted within its discretion by deciding not to reduce Wife's share of the marital estate.

The remaining issues in Husband's appeal concern Wife's alimony award. We review alimony awards for abuse of discretion. *Middleton v. Middleton*, 812 A.2d 1241, 1247 (Pa. Super. 2002). The alimony statute in the Divorce Code provides: "Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary." 23 Pa.C.S.A. § 3701(a). The alimony statute lists seventeen factors that the court must consider in "determining whether alimony is necessary and in determining the nature, amount, duration and

manner of payment of alimony." 23 Pa.C.S.A. § 3701(b).[4] The purpose of

alimony is not to reward one party and to punish the other, but rather to meet

_____

[4] Section 3701(b) provides:

> In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:
>
> (1) The relative earnings and earning capacities of the parties.
> (2) The ages and the physical, mental and emotional conditions of the parties.
> (3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
> (4) The expectancies and inheritances of the parties.
> (5) The duration of the marriage.
> (6) The contribution by one party to the education, training or increased earning power of the other party.
> (7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.
> (8) The standard of living of the parties established during the marriage.
> (9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.
> (10) The relative assets and liabilities of the parties.
> (11) The property brought to the marriage by either party.
> (12) The contribution of a spouse as homemaker.
> (13) The relative needs of the parties.
> (14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under [23 Pa.C.S.A. §] 6102 (relating to definitions).
> (15) The Federal, State and local tax ramifications of the alimony award.

the reasonable needs of the person who is unable to support herself through appropriate employment. *Grandovic v. Grandovic*, 564 A.2d 960, 965 (Pa. Super. 1989). Alimony following divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill. *Id.*

As he argued with regard to equitable discretion, Husband contends that the trial court should have reduced the alimony award because he assumed the debt that both parties owed to his mother. Husband's Brief at 15. For the reasons given in our discussion of equitable distribution above, the trial court acted within its discretion by declining to reduce Wife's alimony award on this basis.

Husband also argues that the trial court unfairly increased Wife's alimony award to relieve Wife of her duty to obtain contribution from her son, Matthew, or obtain contribution from the Pennsylvania Department of Welfare ("DPW"). Husband's Brief at 27-28. We do not read the trial court's order this way. The master recommended that Wife's alimony award only relate to

---

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under [Title 23,] Chapter 35 (relating to property rights), to provide for the party's reasonable needs.
(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

*Id.*

her own living expenses, and that she should seek contribution from Matthew or DPW for expenses relating to Matthew and his son. Although the trial court's order provided more alimony to Wife than the master recommended, the intent of the trial court's order was simply to provide more money for Wife's own living expenses, not to provide her with money for Matthew or his son. Under the trial court's order, Wife continues to have the duty to seek contribution from Matthew or DPW for the living expenses of Matthew and his son. Therefore, Husband's argument does not warrant relief.

Husband's final arguments with regard to alimony warrant remand for further consideration by the trial court. First, Husband argues that the trial court failed to take Wife's post-separation inheritance of $61,000.00 into account when determining the amount of alimony.[5] Husband's Brief at 28. The alimony statute requires the trial court to consider, among other factors, "the expectancies and inheritances of the parties." 23 Pa.C.S.A. § 3701(b)(4).

_____

[5] Husband introduced evidence of Wife's inheritance during the hearing before the master. N.T., 8/24/15, at 102. The master, however, found that "neither party has any" expectancies or inheritances, Master's Report, at 18, and recommended that Wife receive monthly alimony of $1,000.00. *Id.* at 21. Husband did not file a written exception to the master's failure to consider Wife's inheritance. Husband did, however, raise this issue during oral argument in the trial court, and the trial court permitted Husband's counsel to argue this issue on the merits. N.T., 1/9/17, at 30-34. Therefore, we deem this issue preserved for appeal. *Cf. Mammocchio v. 1818 Market Partnership*, 734 A.2d 23, 27 (Pa. Super. 1999) (where party filed tardy post-trial motions in civil action and opposing party did not allege prejudice, trial court acted within its discretion in considering issues).

Wife's inheritance of $61,000.00 is sizable in comparison to the net marital estate of $108,579.00, much of which is non-liquid, and to Husband's annual income of about $100,000.00. The master, however, found erroneously that Wife did not receive an inheritance. Master's Report, at 18. Following Husband's exceptions to the Master's report, the trial court acknowledged during oral argument that Husband's request to take Wife's inheritance into consideration had "some logic." N.T., 1/9/17, at 32. But in its subsequent Order, the trial court made no mention of Wife's inheritance in its analysis of alimony[6] and directed Husband to pay monthly alimony of $1,833.60, almost twice the amount recommended by the master.

There is no real dispute that Wife is entitled to an alimony award, given the wide disparity between Husband's and Wife's earning power and the lack of liquid assets available for equitable distribution. The only question is what amount of alimony Wife should receive. Wife's inheritance deserves weight in the calculation of her alimony award, because it is fairly large in comparison to the liquid marital assets and Husband's income stream. Because the trial court failed to mention Wife's inheritance in its alimony analysis, we cannot tell whether it took the inheritance into consideration. The appropriate remedy, therefore, is to vacate the alimony award and remand for the trial

---

[6] The only time the trial court's order mentioned Wife's inheritance was in connection with a different issue that is not before us on appeal: whether Husband should have to pay attorney fees that Wife incurred during divorce proceedings. Order at 4.

court's explicit consideration of Wife's inheritance. If the trial court took the inheritance into account in its previous Order, it should explain how it treated the inheritance in reaching its alimony award of $1,833.60 per month. If it did not take the inheritance into account, it should recalculate Wife's award and explain how the inheritance factors into the new award.

Next, Husband argues that Wife's alimony award is excessive in both amount and length of time because it was more than Husband should pay if Wife rejoined the workforce. As noted above, the master recommended an alimony award of $1,000.00 until Wife turned 62 by determining that she could work part-time (35 hours per week at $7.25 per hour) and by finding monthly living expenses to be between $1,800.00 to $2,000.00. Although the trial court agreed that Wife can work part-time, Order at 2, the trial court increased Wife's alimony to $1,833.60 and the duration of payments until Wife turned 67. This decision was internally inconsistent: monthly alimony of $1,833.60 would pay all (or at least virtually all) of Wife's monthly expenses, a burden which Husband should not have to shoulder if Wife is capable of partial self-support.

Further, we are concerned about the manner in which the trial court determined monthly alimony to be $1,833.60. The trial court arrived at this amount by calculating forty percent of the difference between the master's determination of Husband's net monthly income ($5,509.00) and Wife's net monthly earning capacity ($925.00). Order at 3. While the Rules of Civil

Procedure prescribe that **alimony *pendente lite***[7] for a spouse without dependent children is forty percent of the difference between the spouses' net incomes, *see* Pa.R.Civ.P. 1910.16-4(a), the straight forty percent calculation is intended to be only an interim remedy pending the determination of **alimony itself**.  The determination of alimony requires the trial court to weigh the seventeen criteria in 23 Pa.C.S.A. § 3701(b), a far more nuanced and comprehensive assessment than alimony *pendente lite*.  Here, instead of focusing on section 3701(b)'s many criteria, it appears the trial court simply invoked Rule 1910.16-4(a)'s forty percent alimony *pendente lite* formula.

Accordingly, on remand, the trial court should arrive at alimony with an item-by-item application of the criteria in section 3701(b) to the facts of this case, including but not limited to (1) analysis of the effect, if any, Wife's post-separation receipt of an inheritance of $61,000.00 has on her alimony award, and (2) analysis of the effect of Wife's ability to work part-time on her alimony award.

Order affirmed as it relates to equitable distribution.  Order vacated as it relates to Wife's alimony award and remanded for proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judge Moulton did not participate in the disposition of this appeal.

---

[7] Alimony *pendente lite* is an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding.  ***Busse v. Busse,*** 921 A.2d 1248, 1254 (Pa. Super. 2007) (citation omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/27/2018