J-A22022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RANDALL FOGLE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANNETTE E. FOGLE | : | |
| | : | |
| Appellant | : | No. 65 WDA 2023 |

Appeal from the Decree Entered December 13, 2022
In the Court of Common Pleas of Somerset County Civil Division at
No(s): 2020-33141

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.: **FILED: December 21, 2023**

Appellant, Annette E. Fogle ("Wife") appeals from the final divorce decree entered on December 13, 2022. We affirm.

The trial court ably summarized the underlying facts of this case:

> [Randall Fogle ("Husband")] filed his complaint in divorce on October 10, 2021. . . . On October 26, 2021, Wife filed her answer and counterclaim for counsel fees, costs, expenses, alimony, and alimony *pendente lite*. [During the September 27, 2022 equitable distribution hearing, the trial court heard the following evidence:]
>
> . . .
>
> Husband and Wife married on June 23, 1979, in Somerset County, Pennsylvania. Neither party was married previously. Husband and Wife have three children together, ages 41, 40, and 35. [The trial court] heard no testimony that either party continues to be responsible in any way for any of their children who are all emancipated. The parties began to live separately on September 25, 2020. The marriage lasted for approximately 41 years.

Husband is 64 years of age and Wife is 60 years of age. Husband receives monthly injections as his cancer treatment requires. Wife has type II diabetes that she manages with medication. Neither parties' health conditions hinder their ability to provide for themselves. The record does not show that either party has contributed to the training, education, or increased earning capacity of the other. Additionally, neither party testified to having other vocational skills. Outside of employment income, each party indicated they have no additional opportunity to acquire capital assets or income.

Husband has worked at Corsa Coal Corp. from 1981 to present day, approximately 42 years in total. He was the primary breadwinner for the family while working at various positions for the company such as an apprentice, a foreman, and a superintendent. He was also one of the nine miners rescued from the Quecreek Mine accident. Wife was the primary caregiver for their children during the marriage. She worked at a Dollar General store for about three months during the late 1980's or early 1990's, but had not been employed until recently. Wife currently works part time as a patient representative for Meyersdale Hospital.

The parties' standard of living while married was largely middle class until approximately 2015 when Husband started to make over six figures. Testimony revealed the parties took vacations to places such as Canada, Mexico, the Dominican Republic, and Africa. The family would also go on yearly or bi-yearly camping trips or vacations to the beach.

Husband's total taxable income in 2021 equaled $181,810. Husband testified that a recent management decision changed both the location of where he works and his position resulting in a decrease of his hourly rate from over $70 an hour to $63. Husband receives health insurance and a 401(k) through his employment. He currently resides in Grantsville, Maryland. Husband makes $1,000 monthly rent payments to Kathy Jenkins, with whom he now lives, as well as contributions to utility bills. Husband also plans to retire on February 7, 2023, when he turns 65. Husband testified that he believes he will receive approximately $2,200 per month from Social Security.

Wife testified that her average monthly gross pay from Meyersdale Hospital was $1200. Wife did not submit a tax return [or] a pay statement at the hearing, but testified that she earns $15 an hour at her position. She currently works approximately 25 hours a week. She also receives spousal support of approximately $1,250.77 every two weeks or $2,501.54 per month. Wife remains on husband's health insurance, but she does have the opportunity to receive health insurance at her current position for approximately $140 per month. Wife is not Medicare eligible until she turns 65. Wife's monthly expenses include a mortgage payment of approximately $200 per month, approximately $2,300 in annual property taxes, homeowner's insurance, and a car payment. Wife contends that she is unsure how she will support herself if she loses spousal support because her employment compensation "does not go very far." Wife believes she can retire at age 67 and 8 months. Wife also believes she is not eligible for Social Security, but conceded that she can draw a "derivative benefit" from Husband's Social Security when "he reaches social security age."

Trial Court Opinion, 12/12/22, at 2-5 (citations omitted).

The trial court concluded that the total value of the marital estate was $1,032,954.60. *Id.* at 13. The trial court also concluded that "a near 50/50 split is the most just distribution of the marital property." *Id.* at 14. The trial court reasoned, however, that, "[b]ecause Husband has several months to work before retirement [and because] Husband makes substantially more income than Wife," the most just distribution of assets "will be to award Husband most of the physical assets while awarding Wife most of the liquid assets." *Id.* Therefore, the trial court awarded Wife the majority of the liquid assets, for a total award to Wife of $519,596.03 and Husband the majority of the physical assets, for a total award to Husband of $513,358.57. *Id.* at 18.

Further, as is relevant to this appeal, the trial court denied Wife's request for alimony. *Id.* at 19.

On December 12, 2022, the trial court entered its final property distribution and divorce decree in this matter. Trial Court Decree, 12/12/22, at 1. Wife filed a timely notice of appeal. She raises one claim to this Court:

> When [Wife] was married for [41] years, has limited earning capacity, cannot maintain the marital status and lifestyle, and [Husband] was the financial provider, did the [trial] court err by denying the alimony claim of [Wife]?

Wife's Brief at 3.

We have reviewed the briefs of the parties, the relevant law, the certified record, and the opinion of the able trial court judge, the Honorable Scott P. Bittner. We conclude that Wife is not entitled to relief in this case, for the reasons expressed in Judge Bittner's December 12, 2022 opinion. Therefore, we affirm on the basis of Judge Bittner's opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Bittner's December 12, 2022 opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/21/2023

- 4 -

RANDALL FOGLE, )   IN THE COURT OF COMMON
                       )   PLEAS OF SOMERSET COUNTY,
                       )   PENNSYLVANIA
        Plaintiff,     )
                       )
    v.                 )
                       )   NO. 141 DIVORCE 2020
                       )
ANNETTE FOGLE,         )
                       )         DIVORCE
        Defendant.     )   EQUITABLE DISTRIBUTION

Certified to be true and
correct copy of the original
Document on file in
this office:

Prothonotary

For Plaintiff:   Terry Graffius, Esq.; Johnstown, PA

For Defendant:   Andrew Snyder, Esq.; Somerset, PA

Hearing Date:   September 27, 2022

2022 DEC 12 P 1: 15

## MEMORANDUM

This memorandum concerns the divorce of Plaintiff Randall Fogle ("Husband") and Defendant Annette Fogle ("Wife") and the equitable distribution of their marital property. The matter is before the Court pursuant to Husband's Complaint in Divorce and Amended Complaint in Divorce filed against Wife on October 10, 2021, and October 14, 2021, respectively. After a divorce and equitable distribution trial held on September 27, 2022, the Court now issues the following Memorandum and accompanying divorce and property distribution decrees.

## I.   FACTUAL AND PROCEDURAL HISTORY

Randall Fogle ("Husband") and Annette Fogle ("Wife") were married on June 23, 1979, in Somerset County, Pennsylvania. Husband and Wife have three children together, ages 41, 40, and 35. The marriage lasted approximately 41 years.

DEC 1 6 2022

Husband filed his Complaint in Divorce on October 10, 2021, requesting a Decree of Divorce. On October 26, 2021, Wife filed her Answer and Counterclaims for counsel fees, costs, expenses, alimony, and alimony pendente lite. On December 21, 2021, we issued a case management order scheduling a divorce hearing for June 24, 2022, and required the parties to submit pretrial statements as well as an inventory. The parties complied with the case management order, but due to scheduling conflicts, we rescheduled the divorce hearing twice. On September 27, 2022, we held the hearing and subsequently took the matter under advisement to determine the issues before the Court including the equitable distribution of the parties' marital property. This Memorandum and Order follows.

## II.    § 3502 Factors

The purpose of equitable distribution in divorce proceedings is to "effectuate economic justice" between the parties and allow a fair and just distribution of their property rights. 23 Pa.C.S. § 3102(a)(6). To reach this objective, the Court utilizes specific factors found in the Divorce Code. *See* 23 Pa.C.S. § 3502.[1]

Husband and Wife married on June 23, 1979, in Somerset County, Pennsylvania. Hr'g Tr., 8–9. Neither party was married previously. *Id.* at 9. Husband and Wife have three children together, ages 41, 40, and 35. *Id.* at 9. We heard no testimony that either party continues to be

---

[1] Under § 3502, relevant factors for our consideration include: (1) the length of the marriage; (2) prior marriages of the parties; (3) age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties; (4) the contribution by one party to the education, training or increased earning power of the other party; (5) the opportunity of each party for future acquisitions of capital assets and income; (6) the sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits; (7) the contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker; (8) the value of the property set apart to each party; (9) the standard of living of the parties established during the marriage; (10) the economic circumstances of each party at the time the division of property is to become effective; (10.1) tax ramifications; (10.2) expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain; and (11) whether the party will be serving as the custodian of any dependent minor children.

2

responsible in any way for any of their children who are all emancipated. The parties began to live separately on September 25, 2020. *Id.* at 78. The marriage lasted for approximately 41 years. *Id.* at 46.

Husband is 64 years of age and Wife is 60 years of age. *Id.* at 12, 78. Husband receives monthly injections as his cancer treatment requires. *Id.* at 13. Wife has type II diabetes that she manages with medication. *Id.* at 87. Neither parties' health conditions hinder their ability to provide for themselves. *Id.* at 10, 128. The record does not show that either party has contributed to the training, education, or increased earning capacity of the other. Additionally, neither party testified to having other vocational skills. Outside of employment income, each party indicated they have no additional opportunity to acquire capital assets or income. *Id.* at 54, 69, 93.

Husband has worked at Corsa Coal Corp. from 1981 to present day, approximately 42 years in total. *Id.* at 11, 41. He was the primary breadwinner for the family while working at various positions for the company such as an apprentice, a foreman, and a superintendent. *Id.* He was also one of the nine miners rescued from the Quecreek Mine accident. *Id.* at 124. Wife was the primary caregiver for their children during the marriage. *Id.* at 90. She worked at a Dollar General store for about three months during the late 1980's or early 1990's, but had not been employed until recently. *Id.* at 89, 96. Wife currently works part time as a patient representative for Meyersdale Hospital. *Id.* at 90–91.

The parties' standard of living while married was largely middle class until approximately 2015 when Husband started to make over six figures. *Id.* at 46. Testimony revealed the parties took vacations to places such as Canada, Mexico, the Dominican Republic,

3

and Africa. The family would also go on yearly or bi-yearly camping trips or vacations to the beach. *Id.* at 48, 95.

Husband's total taxable income in 2021 equaled $181,810. Pl.'s Ex. A. Husband testified that a recent management decision changed both the location of where he works and his position resulting in a decrease of his hourly rate from over $70 an hour to $63. Hr'g Tr., 12. Husband receives health insurance and a 401(k) through his employment. *Id.* at 30, 44. He currently resides in Grantsville, Maryland. *Id.* at 57, 122. Husband makes $1,000 monthly rent payments to Kathy Jenkins, with whom he now lives, as well as contributions to utility bills. *Id.* at 151–52. Husband also plans to retire on February 7, 2023, when he turns 65. *Id.* at 12. Husband testified that he believes he will receive approximately $2,200 per month from Social Security. *Id.* at 150.

Wife testified that her average monthly gross pay from Meyersdale Hospital was $1200. *Id.* at 92. Wife did not submit a tax return nor a pay statement at the hearing, but testified that she earns $15 an hour at her position. *Id.* at 127. She currently works approximately 25 hours a week. *Id.* at 91. She also receives spousal support of approximately $1,250.77 every two weeks or $2,501.54 per month. *Id.* at 121. Wife remains on husband's health insurance, but she does have the opportunity to receive health insurance at her current position for approximately $140 per month. *Id.* at 87, 92. Wife is not Medicare eligible until she turns 65. *Id.* at 87. Wife's monthly expenses include a mortgage payment of approximately $200 per month, approximately $2,300 in annual property taxes, homeowner's insurance, and a car payment. *Id.* at 80, 82, 121. Wife contends that she is unsure how she will support herself if she loses spousal support because her employment compensation "does not go very far." *Id.* at 93. Wife believes she can retire at age 67 and 8 months. *Id.* at 123. Wife also believes she is

4

not eligible for Social Security, but conceded that she can draw a "derivative benefit" from Husband's Social Security when "he reaches social security age." *Id.* at 96, 128.

The parties have asked us to consider various items for equitable distribution, including the marital residence, several vehicles, a 401(k), individual retirement accounts, certificates of deposit, life insurance, gemstones, firearms, bank accounts, and a commemorative canoe. We discuss both the date of separation and the valuation of these assets in the following section.

Husband requested a 50/50 distribution while Wife requested a greater than 50/50 distribution in her favor. *Id.* at 40, 153. Since the separation, Wife has retained possession of the property at 890 Fogletown Road in Berlin, Pennsylvania ("Marital Residence"). Wife retains possession of all but one vehicle while Husband has possession of one vehicle, some firearms, and personal belongings. *Id.* at 113. The parties have not brought to our attention any potential tax ramifications of distribution. Further, the parties have not identified any expense of sale, transfer or liquidation associated with a particular asset. Finally, the equitable division of the Corsa Coal 401(k) will require a qualified domestic relations order (QDRO).

## III. VALUATION OF MARITAL PROPERTY

"The trial court has [the] discretion . . . to value the marital property at either the time of separation or the time of trial to obtain an equitable result, but valuation is made as of a date certain." *Huber v. Etkin*, 58 A.3d 772, 779 n.6 (Pa. Super. 2012) (citation omitted). "The same date need not be used for all assets." *Smith v. Smith*, 904 A.2d 15, 18 (Pa. Super. 2006) (citation omitted).

Prior to discussing marital assets and the valuation of each, the parties made three stipulations. First, the parties agreed that they sold five acres of land to their children and split the proceeds evenly. Hr'g Tr., 4. Second, the parties agreed that they sold a camper or "fifth

5

wheel" for $45,000 and split the proceeds evenly. *Id.* at 5. Third, the parties agreed to the authenticity of several documents entered at the hearing so that any disagreements that would arise would pertain to the value of the asset. *Id.* at 6.

The assets and liabilities considered for equitable distribution include: (1) the Marital Residence and mortgage, (2) vehicles and auto loans, (3) Husband's 401(k), (4) financial investments such as certificates of deposits, individual retirement accounts, and life insurance, (5) gemstones, (6) firearms, (7) bank accounts, and (8) a commemorative canoe. Our valuation and distribution of the aforementioned assets and liabilities follows after we address the date of separation.

## A. Date of Separation

Before equitably distributing the marital property, we must determine the date of separation. The date of separation is presumed to be the date of the filing and serving of a divorce complaint, "unless an earlier date can be substantiated through the presentation of evidence confirming an earlier date." *McCoy v. McCoy*, 888 A.2d 906, 912 (Pa. Super. 2005); *See* 23 Pa.C.S.A. § 3103 (definition of "separate and apart"). The date of separation is important because we use it to determine whether property is marital or non-martial. Marital property is "all property acquired by either party during the marriage and the increase in value of any nonmarital property acquired pursuant to paragraphs (1) and (3)." 23 Pa.C.S.A. § 3501. Some examples of nonmarital property include "[p]roperty acquired by gift" and "[p]roperty acquired after final separation until the date of divorce." 23 Pa.C.S.A. § 3501(a)(3)–(4). Marital property is subject to the Court's equitable distribution while nonmarital property is not subject to equitable distribution. *See* 23 Pa.C.S.A. § 3502.

6

Here, each party offered testimony regarding the date of separation. Husband testified that the date of separation took place in October 2020. Hr'g Tr., 9. Husband filed his Complaint in Divorce on October 10, 2020. Conversely, Wife testified that she believed the specific date of separation was September 25, 2020, because "that's the day he told me in the garage that he had an attorney and he was filing for divorce, and he packed up and left." *Id.* at 78. Husband did not challenge or question Wife's assertion that September 25, 2022, was the date of separation. We find this to sufficiently establish evidence of an earlier date of separation rather than the default presumption of filing and serving of the complaint in divorce. Therefore, September 25, 2020, is the date of separation. Consequently, property acquired after this date is nonmarital property and not subject to equitable distribution.

## B. Marital Residence

Husband introduced an appraisal completed by Scott Boyer Appraisals for the Marital Residence which valued the property at $240,000. *Id.* at 22, 141. The property is encumbered by a mortgage in the amount of $20,155.71 as of a September 21, 2021, statement. Pl.'s Ex. H. Therefore, the net equity of the Marital Residence is $219,844.29. Thus, the amount to be divided among the parties by way of equitable distribution for the Marital Residence is $219,844.29.

## C. Vehicles, Boat and Trailer, and 2009 Carry-on Trailer

There are four vehicles that the parties have asked us to consider for purposes of equitable distribution: a 2018 Dodge Ram 2500, a 2019 Toyota Highlander, a 2006 Suzuki LT-A700XK6 KingQuad, and a 2013 Arctic Cat Prowler 700 HDX. The parties have also asked us to equitably divide a Sea Nymph boat and trailer and a 2009 Carry-on trailer. The 2018 Dodge Ram 2500 and 2019 Toyota Highlander are jointly titled, but the record is not clear

7

regarding which parties are on the titles of the 2013 Arctic Cat , 2006 Suzuki, sea nymph boat and trailer, and 2009 Carry-on trailer.

Husband introduced evidence for values of the 2018 Dodge Ram 2500, 2013 Arctic Cat Prowler 700 HDX, and 2006 Suzuki LT-A700XK6 KingQuad. The 2018 Dodge Ram's private sale value according to Kelly Blue Book is $42,467.00. Pl.'s Ex. J. The 2018 Dodge Ram is currently financed and has an outstanding loan balance of $22,406.56. Pl.'s Ex. K. Thus, the net equity of the 2018 Dodge Ram is $20,060.44. Husband next introduced a National Automobile Dealers Association ("NADA") estimate for the 2006 Suzuki, and according to that estimate, its retail value is $2,165. Pl.'s Ex. L. Husband then introduced a NADA estimate for the 2013 Arctic Cat Prowler showing a retail value of $5,740. Pl.'s Ex. M. Wife neither objected nor introduced contrary evidence to contest the values of these vehicles.

Husband testified that the Sea Nymph fishing boat and trailer is worth $1,000, and the 2009 Carry-on trailer used to haul "a side-by-side or something on it" is worth $500. Hr'g Tr., 29–30. Wife did not provide contrary testimony or evidence to suggest these values were inaccurate.

Wife introduced evidence for the value of the 2019 Toyota Highlander. According to Kelly Blue Book, the vehicle's trade in value is $41,275. Def.'s Ex. 1. Wife also confirmed that this vehicle is financed and has an outstanding loan balance of $21,882.04. Def.'s Ex. 2. Thus, the net equity of the 2019 Toyota Highlander is $19,392.96. Although Husband did inquire as to the difference between private party value and trade-in value, no contrary valuation evidence was submitted. Hr'g Tr., 131.

Neither party argued that any of the vehicles, Sea Nymph boat and trailer, or 2009 Carry-on trailer were nonmarital property. Thus, the equity of these vehicles is subject to

8

equitable distribution. *Id.* at 102. Adding the above values together, we find that the amount to be divided among the parties by way of equitable distribution for all vehicles, boat, and trailers is $48,858.40.

### D. Husband's 401(k)

Husband began working at Corsa Coal Corp. in 1981 and is currently employed by the company. *Id.* at 11. Husband contributes to a 401(k) through his employment, and he agrees that the 401(k) is marital property subject to equitable distribution. *Id.* at 154. Husband introduced a June 30, 2022, statement from his 401(k) account revealing a balance of $482,873.36. Pl.'s Ex. N. He further testified, which was supported by the same June 2022 statement, that he made three contributions to the 401(k) after the date of separation in the amounts of $6,084 (total 2022 contribution), $11,171 (total 2021 contribution), and $19,500 (total 2020 contribution). Pl.'s Ex. N; Hr.'g Tr., 31. As mentioned previously, property acquired after separation is not subject to equitable distribution.

These wages were earned after the date of separation and subsequently contributed to the 401(k), thus precluding equitable distribution. A closer look, however, reveals that the 2020 contribution of $19,500 occurred during the entire year of 2020. Hr'g Tr., 62. The parties separated on September 25, 2020. This means approximately nine months of the 2020 contributions is marital property. Thus, the actual amount not subject to equitable distribution in 2020, because it was made after the date of separation, is $3,516.49. *See* Pl.'s Ex. N. This represents the dollar amount contributed to the 401(k) that took place between October 1, 2020, and December 31, 2020. As a result, the total amount of contributions made after the date of separation is $20,771.49. Therefore, we must subtract $20,771.49 from the total 401(k) balance because it is not subject to equitable distribution. Consequently, the value of Husband's 401(k)

9

to be divided amongst the parties in equitable distribution via an appropriate QDRO is $462,101.87.

### E. Financial Investments

The parties have six financial investments that are subject to equitable distribution. There are two Commonwealth Financial Network ("CFN") individual retirement accounts ("IRA"), two Prudential whole life insurance policies, and two certificates of deposit ("CD"). Pl.'s Ex.'s O, P, Q, R; Def.'s Ex. 3, 6. One CD is through First National Bank and a second CD is through First People's Community Federal Credit Union ("People's").

Husband introduced a June 2022 statement showing a CFN IRA valued at $95,738.75. Pl.'s Ex. P. He then introduced a June 2022 statement showing a joint CFN IRA valued at $32,571.58. Pl.'s Ex. Q. Husband also introduced his Prudential life insurance policy through a July 12, 2022, letter indicating a net cash value of $54,919.59. Pl.'s Ex. O. Wife introduced her Prudential life insurance policy through a June 11, 2021, account balance printout showing a net cash value of $6,273.71. Def.'s Ex. 3. Husband also submitted a First National Bank ("FNB") CD truth-in-savings disclosure demonstrating a value of $34,170.59. Pl.'s Ex. R. Though Wife testified that the account has been closed, Husband acknowledged that the value is subject to equitable distribution. Hr'g Tr., 66, 105. Lastly, Wife introduced two People's CD statements with the most recent statement dated September 2021, showing a value of $10,611.62. Def.'s Ex. 6.

Neither party made the Court aware of any tax implications or financial consequences of withdrawing, closing, or transferring these funds to accomplish equitable distribution. Thus, adding these six financial investment values together, the amount to be divided amongst the parties in equitable distribution is $234,285.84.

### F. Gemstones

The parties purchased numerous gemstones over the course of their marriage that they now wish to have equitably distributed. Husband introduced appraisal reports completed by Universal Gemological Laboratory, Inc. spanning a timeframe from 2009 to 2011. Pl.'s Ex. U. The parties own a total of 12 gemstones and each has its own appraisal report. *Id.* The aggregate value of all 12 gemstones is $54,765. Wife testified, however, that "there was an opal that I cannot find." Hr'g Tr., 110. The appraisal values the opal stone at $6,290. Pl.'s Ex. U. Wife further testified that Husband has in his possession "two zircons that Mr. Fogle made into rings." *Id.* at 108. When asked whether he had some of the gemstones "made into custom jewelry made for your wear" Husband replied "I had some, yes." *Id.* at 60. He later recanted when asked "it's your testimony here today that you don't have any of those gemstones" to which he replied "not that I know of." *Id.* Wife's testimony in conjunction with Husband's inconsistent testimony lead us to believe Husband is in possession of two Zircon rings. Wife has possession of the remaining nine gemstones. Therefore, because an opal gemstone is missing, the amount to be divided among the parties by way of equitable distribution of eleven gemstones is $48,475.

### G. Firearms

The parties each testified to having firearms in their possession. *Id.* at 68–69, 113–14. Upon Husband's departure from the Marital Residence, he took several firearms with him and acquired more from his sister. *Id.* at 68. In total, Husband has 46 firearms and had each appraised by Mountain State Auction Services. Pl.'s Ex. T. The total value of the firearms in Husband's possession is $26,050. *Id.* Husband also testified, and Wife agreed, that Husband

11

obtained some of the firearms in his possession through inheritance from his father. Hr'g Tr., at 69. The total value of nonmarital firearms is $11,300. Pl.'s Ex. T.

Conversely, Wife also has possession of several firearms. Hr'g Tr., 113–14. She has 15 firearms and had each appraised by Hoovers Outfitting. Def.'s Ex. 5. The total value of the firearms in Wife's possession is $2,880. *Id.* Wife also testified, "I only want my two pistols. That's it." Hr'g Tr., 142. Wife specified that she wanted the "two handguns that are mine . . . [t]he Browning Buckmark .22 . . . [a]nd the SIG Sauer [P238]." *Id.* at 115–16. "The rest do belong to Randy." *Id.* at 115. Husband did not object to this request. The combined value of the handguns that Wife is requesting is $525. *See* Def.'s Ex. 5. Because we must subtract the value of the nonmarital firearms from the total value of firearms, the amount to be equitably distributed between the parties is **$17,600**.

### H. Bank Accounts

The parties also have a joint bank account. Hr'g Tr., 24–25. Husband introduced a statement showing a FNB checking account with a balance of $1,759.20. Pl.'s Ex. I. This joint bank account is subject to equitable distribution. Thus, the amount to be equitably distributed from the FNB joint checking account is **$1,759.20**.

Wife also testified that she has a savings account with FNB. Hr'g Tr., 96, 132. She stated the balance was approximately $10,000. *Id.* at 95. Wife submitted no documentation of this account. Her testimony revealed that a substantial portion of the account balance originated from the sale of the camper. *See id.* at 95–96. The parties already stipulated that these funds were previously equally divided when the camper was sold. Thus, there is no need for this Court to equitably distribute the already divided funds from the camper. Because (1) there was no documentation submitted evidencing the existence of Wife's FNB savings account; (2) the

12

value she testified to is similar to that in Wife's People's CD account, causing confusion when Wife stated "savings" but may have meant "CD"; and (3) a substantial portion of the FNB savings funds came from already divided property, we find that even if this account does exist, it is nonmarital property not subject to equitable distribution.

## I. Commemorative Canoe

Husband was one of the nine miners involved in the Quecreek mine accident. *Id.* at 124. Oprah Winfrey gifted a limited edition 100-year commemorative canoe to each miner. *Id.* at 124–25. Gifts are nonmarital property and thus not subject to equitable distribution. 23 Pa.C.S.A. § 3501(a)(3). However, the "increase in value of any nonmarital property" is subject to equitable distribution. 23 Pa.C.S.A. § 3501(a). Husband testified that the canoe was worth $500. Hr'g Tr., 30. Wife testified that the canoe "is still in its original packing . . . [and] has never seen the light of day." *Id.* at 143. In her estimation, its value is $3,000. *Id.* at 125. Neither party based these estimations on expert opinions, appraisals, or objective proof of value. Therefore, the values given by each party are speculative. Consequently, we find that the canoe has not increased in value and thus is not subject to equitable distribution.

Based on our valuations and findings of marital property, we find the total value of the marital estate that is subject to equitable distribution is **$1,032,954.60**. This number is based on adding all of the marital assets and deducting the marital debts. The calculation of the marital estate is set forth below.

13

| Marital Asset/Debt | Value |
|---|---|
| Marital Residence | $240,000.00 |
| Mortgage on Marital Residence | ($20,155.71) |
| **Net Equity** | **$219,844.29** |
| | |
| 2018 Dodge Ram 2500 | $42,467.00 |
| Auto Loan Balance | ($22,406.56) |
| **Net Equity** | **$20,060.44** |
| | |
| 2019 Toyota Highlander | $41,275.00 |
| Auto Loan Balance | ($21,882.04) |
| **Net Equity** | **$19,392.96** |
| | |
| 2006 Suzuki LT-A700XK6 KingQuad | **$2,165.00** |
| 2013 Arctic Cat Prowler 700 HDX | **$5,740.00** |
| Sea Nymph boat and trailer | **$1,000.00** |
| 2009 Carry-on trailer | **$500.00** |
| | |
| CORSA Coal 401(k) balance | $482,873.36 |
| Nonmarital Contributions | ($20,771.49) |
| **Net Equity** | **$462,101.87** |
| | |
| CFN IRA (xxx-xxx933) | **$95,738.75** |
| CFN IRA (xxx-xxx993) | **$32,571.58** |
| FNB CD (xxxxxx945) | **$34,170.59** |
| People's CD (xxxx360) | **$10,611.62** |
| Husband's Prudential Whole Life Insurance (xxxxx030) | **$54,919.59** |
| Wife' Prudential Whole Life Insurance (xxxxx420) | **$6,273.71** |
| | |
| Gemstones | $54,765.00 |
| Missing Opal | ($6,290.00) |
| **Net Equity** | **$48,475.00** |
| | |
| Firearms | $28,930.00 |
| Nonmarital firearms | ($11,300.00) |
| **Net Equity** | **$17,630.00** |
| | |
| FNB Joint Checking Account | **$1,759.20** |
| | |
| **Net Value of the Marital Estate** | **$1,032,954.60**[2] |

---

[2] This value is the sum of all numerical values in bold print. Numerical values in parentheses signify a debt or subtraction.

14

## IV. EQUITABLE DISTRIBUTION

Husband requests this Court to split the marital estate 50/50 and Wife requests this Court to split the assets greater than 50/50 in her favor. We find that a near 50/50 distribution is the most equitable. Husband contributed to the marriage by his role of the primary wage earner that supported the family. Wife contributed to the marriage as being the primary caretaker for their children and has continued to care for the property. In other words, both Husband and Wife equally contributed to and benefitted from the marriage. Furthermore, we find that there is no compelling reason to distribute a larger portion of the marital estate to one spouse rather than the other. Accordingly, we find that a near 50/50 split is the most just distribution of the marital property.

Because Husband has several months to work before retirement, Husband makes substantially more income than Wife, and considering the economic circumstances of each party, we find the most equitable distribution will be to award Husband most of the physical assets while awarding Wife most of the liquid assets. Due to the diversification of assets, we distribute the property by asset rather than requiring a party to make a cash payment to another party. We find this overall equitable distribution fits both the party's needs, most requests, and economic circumstances of each party after property distribution. Several equitable distribution factors support our determination on equitable distribution.[3]

The total martial estate value equals $1,032,954.60. By splitting up the marital estate by asset, we do not come to a perfect 50/50 split, but we arrive at an equitable solution giving the parties most of what was requested and what we find to be most equitable. First, Husband

---

[3] The "needs of the parties", "sources of income", "opportunity for each party for future acquisition of capital assets and income", and the "economic circumstances of each party at the time of division of property." 23 Pa.C.S.A. § 3502 (3), (5), (6), (10), respectively.

15

inherited the Martial Residence from his parents, and the property has been in his family for generations. Therefore, Husband is awarded ownership and possession of the Martial Residence, and $219,844.29 worth of equity is credited to him.

Second, each party will keep the vehicle in their current possession. Consequently, Husband shall receive the 2018 Dodge Ram 2500 and the corresponding $20,060.44 worth of equity is credited to him. Wife shall receive the 2019 Toyota Highlander and the $19,392.96 worth of equity is credited to her. Additionally, Husband shall receive the 2006 Suzuki LT-A700XK6 KingQuad, worth $2,165.00, the 2013 Arctic Cat Prowler 700 HDX worth $5,740.00, the Sea Nymph boat and trailer worth $1,000.00, and the 2009 Carry-on trailer worth $500.00. These values are credited to Husband. Because these vehicles maintain the residential property and serve a recreational purpose, Wife is better served with liquid assets rather than the burden of selling these vehicles.

Third, both Wife and Husband are entitled to 50% of Husband's Corsa Coal 401(k). Each party will have $231,050.94 credited to them. An appropriate QDRO shall be prepared to effectuate the distribution of the aforesaid portion of Husband's 401(k) to Wife.

Fourth, Wife shall receive both CFN IRAs (account xxx-xxx933 and xxx-xxx993) worth $95,738.75 and $32,571.58, the FNB CD (account xxxxxx945) worth $34,170.59, the People's CD (account xxxx360) worth $10,611.62, and Husband's Prudential Whole Life Insurance (account xxxxx030) worth $54,919.59. These values are credited to Wife.

Fifth, Wife shall receive the remaining nine gemstones. Of the original 12 gemstones, Husband has possession of two Zircon gemstones and one opal gemstone is missing. The value of the missing opal is $6,290.00. The value of the missing opal deducted from the total value of the gemstones is $48,475.00. The combined worth of the two Zircon gemstones in

16

Husband's possession is $7,860.00. Thus, $7,860.00 is credited to him, leaving $40,615.00 worth of equity in nine remaining gemstones. As a result, Wife is credited with the remaining equity in the nine gemstones in the amount of $40,615.00.

Sixth, because Wife is best served with liquidity and Husband with the actual asset, Husband shall receive all but two firearms. Wife testified that she only wanted two handguns, while Husband testified that several firearms were inherited from his father and that he also wanted to keep several other firearms. The total equity in firearms is $28,930. Of the total, $11,300 is nonmarital property not subject to equitable distribution, resulting in $17,630 worth of equity. Wife is awarded the .22 caliber Browning Buckmark, serial number xxxxxx992, and the SIG Sauer P238 serial number xxxxxx329. Accordingly, she is credited with $525.00 worth of equity. Therefore, Husband is credited with the remaining $17,105.00 worth of equity.

Lastly, Husband shall receive both the FNB joint checking account and the limited edition 100-year commemorative canoe. The FNB joint checking account in the amount of $1,759.20 is credited to Husband. The canoe, however, was a gift and it is nonmarital property not subject to equitable distribution. Because the parties speculated as to its worth without expert opinion or some objective proof of value, any increase in the value of the canoe over time is speculative as well. As a result, the canoe is Husband's sole property and we also find that there has been no increase in value.

For the reasons above, the distribution of marital assets is as follows:

17

## Randall Fogle

| Asset | Value |
|---|---|
| Net Equity of Marital Residence | $219,844.29 |
| 2018 Dodge Ram 2500 | $20,060.44 |
| 2006 Suzuki LT-A700XK6 KingQuad | $2,165.00 |
| 2013 Arctic Cat Prowler 700 HDX | $5,740.00 |
| Sea Nymph boat and trailer | $1,000.00 |
| 2009 Carry-on trailer | $500.00 |
| 1/2 Corsa Coal 401(k) | $231,050.93 |
| Wife' Prudential Whole Life Insurance (xxxxx420) | $6,273.71 |
| Two Zircon Rings | $7,860.00 |
| Firearms | $17,630.00 |
| FNB Joint Checking Account | $1,759.20 |
| | **$513,883.57** |
| | |
| Wife's two handguns | ($525.00) |
| | **Total: $513,358.57** |

## Annette Fogle

| Asset | Value |
|---|---|
| 2019 Toyota Highlander | $19,392.96 |
| CFN IRA (xxx-xxx933) | $95,738.75 |
| CFN IRA (xxx-xxx993) | $32,571.58 |
| FNB CD (xxxxxx945) | $34,170.59 |
| People's CD (xxxx360) | $10,611.62 |
| Husband's Prudential Whole Life Insurance (xxxxx030) | $54,919.59 |
| 1/2 Corsa Coal 401(k) | $231,050.94 |
| Gemstones | $48,475.00 |
| Handguns (Buckmark .22 and Sig Sauer P238) | $525.00 |
| | $527,456.03 |
| | |
| Husband's Two Zircon Rings | ($7,860.00) |
| | **Total: $519,596.03** |

## V.    ALIMONY AND COUNSEL FEES

Wife requests that Husband be ordered to pay her alimony. "Alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable

needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." *Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa. Super. 2004) (quoting *Moran v. Moran*, 839 A.2d 1091, 1096-97 (Pa. Super. 2003)). "The purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." *Id.*

> In determining whether alimony is necessary, and in determining the nature, amount, duration and manner of payment of alimony, the court must consider numerous factors including the parties' earnings and earning capacities, income sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as a homemaker and the duration of the marriage.

*Id.*; *See* 23 Pa.C.S.A. § 3701(b). Additionally, "the factors in Section 3701(b) do not create an exhaustive list. In fact, the trial court should also consider the assets the petitioning spouse received in equitable distribution." *Schultz v. Schultz*, 184 A.3d 168, 180 (Pa. Super. 2018) (citation omitted).

Here, we fail to see how Wife would be unable to support herself to justify an award of alimony. Wife is currently employed, capable of working full-time[4], and will receive a substantial amount of liquid assets from the marriage. The record shows that even though Wife has type II diabetes, it does not prevent her from employment. Additionally, Wife offered no evidence as to her monthly expenses outside of the mortgage payment. As a result, the amount of money Wife will receive from equitable distribution of marital property and through her employment demonstrates that Wife has not sufficiently demonstrated that alimony is necessary to meet her needs. Therefore, Wife's claim for alimony is DENIED.

---

[4] Although Wife is currently working part-time at Meyersdale Hospital, Wife conceded that there is nothing preventing her from working full time. Hr'g Tr., 90–91, 128.

19

Lastly, we turn to Wife's claim for counsel fees. "The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be 'on par' with one another." *Busse v. Busse*, 921 A.2d 1248, 1258 (Pa. Super. 2007) (citing *Teodorski*, 857 A.2d at 201). A court may deny a claim for counsel fees where the party receives sufficient assets in equitable distribution to pay the legal expenses. *Tagnani v. Tagnani*, 654 A.2d 1136, 1139 (Pa. Super. 1995) (citing *Adelstein v. Adelstein*, 553 A.2d 436, 437 (Pa. Super. 1989)).

Here, we fail to see how Wife would be put at a "financial disadvantage" with having to pay counsel fees. Wife is receiving a substantial amount of liquid assets from equitable distribution, and Wife earns income from her employment. Taken together, Wife has sufficient income to pay her legal expenses. Accordingly, Wife's claim for counsel fees is DENIED.

Consistent with our Memorandum we enter the following Decree in Divorce and Property Distribution Decree:

20

RANDALL FOGLE,                    )  IN THE COURT <del>OF COMMON</del> ty Prothonotary
                                  )  PLEAS OF SOMERSET COUNTY
                                  )  PENNSYLVANIA
                    Plaintiff,    )  Filed ___2022 Dec 12___
                                  )
                                  )  at____1:17____ ~am~/pm
           v.                     )
                                  )  BY ___Kou Pals___
                                  )  NO. 141 DIVORCE:2020  CLERK
                                  )
ANNETTE FOGLE,                    )
                                  )                         \
                                  )        DIVORCE
                    Defendant.    )  EQUITABLE DISTRIBUTION

Certified to be true and
correct copy of the original
Document on file in
this office.

Prothonotary

## PROPERTY DISTRIBUTION DECREE

AND NOW, this __12th__ day of December, 2022, the Court having conducted an equitable distribution trial on September 27, 2022, for the reasons discussed in the accompanying Memorandum, it is hereby ORDERED ADJUDGED and DECREED as follows:

1. Husband is awarded sole title and possession of the Marital Residence at 890 Fogletown Road, Berlin, Pennsylvania. Husband shall, within sixty (60) days, prepare at his own expense the requisite documentation transferring Wife's interest in the Marital Residence to Husband. Wife shall sign any requisite documentation and shall execute the required documents within fourteen (14) days of receipt and provide them to Husband.

2. Husband shall assume sole responsibility for satisfaction and repayment of the mortgage on the Marital Residence. Husband is ordered to pay any and all delinquent taxes and to refinance the mortgage on the Marital Residence as his sole and separate liability or otherwise cause Wife to be released as an obligor. Husband is responsible for any mortgage payments, loan payments, taxes, maintenance, and any insurance without contribution or reimbursement from Wife.

3. Husband is awarded the 2018 Dodge Ram 2500, 2006 Suzuki LT-A700XK6 KingQuad, 2013 Arctic Cat Prowler 700 HDX, Sea Nymph boat and trailer, and 2009 Carry-on trailer, free and clear of any interest previously held by Wife. Wife shall no longer have any interest in the 2018 Dodge Ram 2500, 2006 Suzuki LT-A700XK6 KingQuad, 2013 Arctic Cat Prowler 700 HDX, Sea Nymph boat and trailer, and 2009 Carry-on trailer. Husband shall, within sixty (60) days, prepare at his own expense the requisite documentation transferring Wife's interest in the 2018 Dodge Ram 2500, 2006 Suzuki LT-A700XK6 KingQuad, 2013 Arctic Cat Prowler 700 HDX, Sea Nymph boat and trailer, and 2009 Carry-on trailer to Husband. Wife shall sign any requisite documentation and shall execute the required documents within fourteen (14) days of receipt and provide them to Husband.

4. Husband shall assume sole responsibility for satisfaction and repayment of the auto loan on the 2018 Dodge Ram 2500. Husband is ordered to assume sole and separate liability or otherwise cause Wife to be released as an obligor. Husband is responsible for any auto loan payments, taxes, maintenance, and any insurance without contribution or reimbursement from Wife.

5. Wife is awarded the 2019 Toyota Highlander, free and clear of any interest previously held by Husband. Husband shall no longer have any interest in the 2019 Toyota Highlander. Wife shall, within sixty (60) days, prepare at her own expense the requisite documentation transferring Husband's interest in the 2019 Toyota Highlander to Wife. Husband shall sign any requisite documentation and shall

execute the required documents within fourteen (14) days of receipt and provide them to Wife.

6. Wife shall assume sole responsibility for satisfaction and repayment of the auto loan on the 2019 Toyota Highlander. Wife is ordered to assume sole and separate liability or otherwise cause Husband to be released as an obligor. Wife is responsible for any auto loan payments, taxes, maintenance, and any insurance without contribution or reimbursement from Husband.

7. Wife is awarded $231,050.94 of Husband's Corsa Coal 401(k) which constitutes 50% of the $462,101.87 value of the 401(k) as of the date of separation. Wife shall, within sixty (60) days, prepare at her own expense the requisite qualified domestic relations order transferring $231,050.94 of Husband's 401(k) to an appropriate deferred savings plan in Wife's name. Husband shall sign any requisite documentation and shall execute the required documents within fourteen (14) days of receipt and provide them to Wife.

8. Wife is awarded the following five financial investments: Commonwealth Financial Network ("CFN") IRA account number xxx-xxx933 worth $95,738.75, CFN IRA account number xxx-xxx993 worth $32,571.58, First National Bank ("FNB") CD account number xxxxxx945 worth $34,170.59, First People's Community Federal Credit Union CD account number xxxx360 worth $10,611.62, and Prudential Whole Life Insurance account number xxxxx030 worth $54,919.59. Wife shall, within sixty (60) days, prepare at her own expense the requisite documentation transferring Husband's interest. Husband shall sign any requisite

documentation and shall execute the required documents within fourteen (14) days of receipt and provide them to Wife.

9. Husband is awarded the Prudential Whole Life Insurance Policy account number xxxxx420 worth $6,273.71. Husband shall, within sixty (60) days, prepare at his own expense the requisite documentation transferring Wife's interest. Wife shall sign any requisite documentation and shall execute the required documents within fourteen (14) days of receipt and provide them to Husband.

10. Wife is awarded all Gemstones currently in her possession, a total of nine gemstones. Husband shall no longer have any interest in these remaining gemstones.

11. Husband is awarded two zircon rings believed to be in his possession. Wife shall no longer have any interest in the two zircon gemstones.

12. Husband is awarded all but two firearms. With the exception of the two firearms listed in paragraph 13, Wife shall no longer have any interest in any of the firearms.

13. Wife is awarded the .22 caliber Browning Buckmark, serial number xxxxxx992, and the SIG Sauer P238, serial number xxxxxx329. Husband shall no longer have any interest in either of these firearms.

14. Husband is awarded the FNB checking account with a balance of $1,759.20, account number xxxxxx419. Husband shall, within sixty (60) days, prepare at his own expense the requisite documentation transferring Wife's interest in the FNB checking account to Husband. Wife shall sign any requisite documentation and shall execute the required documents within fourteen (14) days of receipt and provide them to Husband.

15. Husband is awarded sole ownership of the limited edition 100-year commemorative canoe.

16. Within forty-five (45) days, Husband shall make available to Wife her personal property in the Marital Residence.

17. All other reimbursement and distribution claims are denied.

18. Wife's claim for alimony is denied.

19. Each party shall bear the burden of paying his/her own attorney's fees and costs.

BY THE COURT:

Scott P. Bittner, J.

IN THE COURT OF COMMON PLEAS
SOMERSET COUNTY, PENNSYLVANIA

# DECREE IN DIVORCE

RANDALL FOGLE,

    Plaintiff,

    v.                                 No. 141 DIVORCE 2020

ANNETTE FOGLE,                     DIVORCE
                                    EQUITABLE DISTRIBUTION

    Defendant,

AND NOW, this __12TH__ day of December, 2022, it is hereby ORDERED ADJUDGED AND DECREED that RANDALL FOGLE, Plaintiff, and ANNETTE FOGLE, Defendant, are divorced from the bonds of matrimony. Costs waived.

A separate distribution property decree had been executed in accordance with this divorce.

The Court retains jurisdiction of the following claims which have been raised of record in this action for which a final order has not yet been entered: NONE

December 12, 2022 , I hereby
certify that the foregoing is a true and
correct copy of the original DECREE IN
DIVORCE on file in this office

BY THE COURT:

_Prothonotary_

/s/ _Scott P. Bittner_
            Judge

Brian K. Fochtman
PROTHONOTARY